In re Ernest L. LEVINE, Debtor.

**NORTH COMMUNITY STATE BANK, Appellee,**

v.

**Ernest L. LEVINE, Appellant.**

**Nos. 79B40892, 84C9510.**

United States District Court, N.D. Illinois, E.D.

Dec. 20, 1984.

---

Ernest L. Levine, pro se.

Michael S. Holzman, Martin & Karcazes, Chicago, Ill., for appellee.

1. Citations to individual sections of the Code will take the form "Code § —."

2. Judge Eisen's conversion order was prompted by a motion brought by one of Levine's creditors to convert the case to a proceeding under

## MEMORANDUM OPINION
### AND ORDER

SHADUR, District Judge.

Ernest L. Levine ("Levine") appeals from the September 20, 1984 order of Bankruptcy Judge Robert L. Eisen (the "Order") turning over to North Community Bank ("Bank") the proceeds realized on the sale of an automobile securing Levine's indebtedness to Bank. Levine argues the Order was improper because Bank had not filed proof of its claim within the required time and therefore was not entitled to the proceeds. For the reasons stated in this memorandum opinion and order, Judge Eisen's Order is affirmed.

### Facts

On November 20, 1979 Levine, then engaged in business as a sole proprietor, filed a petition under Chapter 13 of the Bankruptcy Reform Act of 1978 (the "Code" [1]), 11 U.S.C. §§ 1301–1330, claiming his income was sufficiently stable to make payments under a Chapter 13 plan. On January 11, 1980 a first meeting of the creditors was held pursuant to Code § 341, and the case proceeded in Chapter 13 until April 29, 1980, when Judge Eisen ordered that it be converted to a proceeding under Code Chapter 11, 11 U.S.C. §§ 1101–1174. Levine appealed Judge Eisen's conversion order to this Court.[2]

Several events during the pendency of that appeal are relevant to the current proceeding:

1. On September 19, 1980 Bank filed a proof of claim stating Levine's principal indebtedness to it as $4,330.34, secured by a lien on Levine's 1978 Pontiac Grand Prix.

2. On October 2, 1980 Bank sought relief from the automatic stay imposed by Code § 361, asserting the automobile's market value was then equal to the

Code Chapter 7, 11 U.S.C. §§ 701–766. *Glenview State Bank v. Levine*, 8 B.R. 281, 281–83 (N.D.Ill.1980), this Court's opinion vacating that Bankruptcy Court order, describes the circumstances surrounding the conversion.

secured indebtedness but was subject to significant depreciation if not promptly realized. On November 14 Judge Eisen ordered Levine either (a) to commence monthly payments on the outstanding indebtedness or alternatively (b) to deliver the automobile to Bank. Levine chose the latter course, and on January 9, 1981 Judge Eisen authorized Bank to sell the automobile for not less than $4,300 (the amount of Bank's claim). Bank in turn sold the car, but for reasons not clear in the record on the present appeal Judge Eisen required the sale proceeds to be held in an escrow account pending further order of the Bankruptcy Court.

3. On November 19, 1980 Judge Eisen issued an order setting a time for the first meeting of creditors following the conversion of the case to Chapter 11.

On December 27, 1980 this Court vacated the conversion to Chapter 11 (see *Glenview State Bank*, 8 B.R. at 284), but it was not until February 5, 1981 that Judge Eisen filed an order reclassifying the case to Chapter 13 and scheduling yet another first meeting of creditors for February 19. On March 17 Judge Eisen confirmed a Chapter 13 plan (the "Plan") providing secured creditors with 100% and unsecured creditors with 10% of their duly proved and allowed claims. Levine's debt to Bank was listed in the Plan as a secured claim bearing the following notation:

To be disbursed from funds held in escrow by North Community Bank by Order of Court.

Because of the Plan's payment schedule [3] the Plan remained in effect for three years, until Levine filed a motion for discharge

under Code § 1328 in early 1984. That motion gave rise to cross petitions by Bank and Levine for an order turning over the funds in the escrow account.

Levine's argument for his position is at best muddled so far as the law goes,[4] but it resolves essentially to this: Only allowed claims were to be paid under the Plan. For its claim to be allowed, Bank was required to file the claim within six months after the first creditors' meeting following the original Chapter 13 filing—a meeting held January 11, 1980. Because Bank did not file its proof of claim until September 19, 1980, over eight months after that creditors' meeting, it did not have an allowed claim. Of course the conversion to Chapter 11 occurred within six months of the January 11 creditors' meeting, but Levine contends whatever consequence that might have had as to the allowability of Bank's claim was nullified by the later reconversion to Chapter 13. On that theory the Plan "provided for" Bank's claim and confirmation of the plan was binding upon Bank under Code § 1327,[5] but because Bank's claim was not duly proved and allowed it was not eligible to be paid.

### Bank's Entitlement to the Escrowed Funds

In rejecting Levine's argument, Judge Eisen identified two possible grounds for his conclusion (though without specifically indicating which of them formed the basis of his holding):

1. Upon the conversion of the case to Chapter 11, Bank's claim was automatically deemed to have been proved because it appeared on the schedule of lia-

---

3. It provided for monthly payments to the trustee for a period of 36 months. In turn the trustee was to make payments on the allowed claims.

4. Levine, though represented by counsel in the bankruptcy proceeding, is now acting pro se.

5. Code § 1327 provides:
   (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor

has objected to, has accepted, or has rejected the plan.
   (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
   (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

bilities filed by Levine as required by Code § 521(1).

2. Even if Bank failed to file a timely proof of claim, it nevertheless retained its lien on Levine's automobile, a lien that extended to the proceeds once the automobile was sold.

Though the second of those reasons is dispositive, this opinion will treat briefly with the first as well.

1. Timeliness of Bank's Filing of Its Claim

Rule of Bankruptcy Procedure ("Old Rule") 11–33(b)(2)[6] provided that in a Chapter 11 case:

> A claim, including an amendment thereof, must be filed before confirmation of the plan except as follows:
>
> (A) if scheduled by the debtor as undisputed, not contingent, and liquidated as to amount, a claim or amendment to a claim may be filed within 30 days after the date of mailing notice of confirmation to creditors but in such event shall not be allowed for an amount in excess of that set forth in the schedule. . . .

That provision makes one thing clear enough: Had Levine originally filed in Chapter 11 Bank would have been under no obligation to file its proof of claim until 30 days after notice of confirmation was mailed—something that never happened. Because its claim was scheduled and was not disputed, contingent or unliquidated, Bank would have had considerable leeway as to when it filed a proof of claim. Judge Eisen reasoned that once Levine's case had been converted to Chapter 11 Bank was entitled to the benefit of Old Rule 11–33(b)(2), because the conversion came before the expiration of the time allotted for filing a timely proof of claim under the original Chapter 13 filing.

That line of analysis seems unexceptionable in terms of the general six-month rule for filing claims in Chapter 13 proceedings. It does not however treat with the possible impact of Old Rule 13–302(e)(1) (applicable to secured claims):

> A secured claim, whether or not listed in the Chapter 13 Statement, must be filed before the conclusion of the first meeting of creditors in the Chapter 13 case unless the court, on application before the expiration of that time and for cause shown, shall grant a reasonable, fixed extension of time. Any claim not properly filed by the creditor within such time shall not be treated as a secured claim for purposes of voting and distribution in the Chapter 13 case.

It will be remembered the first meeting of creditors under the original Chapter 13 filing was begun January 11, 1980, while Bank did not file its proof of claim until September 19, 1980. Though the Bankruptcy Court docket reflects the first meeting as having been *adjourned* to February 13, 1980, it bears no entry for the latter date and remains silent as to any continuation of the first meeting. Consequently this Court is uninformed whether the first meeting was or was not *concluded* before the April 20, 1980 conversion order to Chapter 11, and hence as to whether Bank had failed to conform to Old Rule 13–302(e)(1) while the case was still in Chapter 13.

Whatever the answer to that question might be, Bank theoretically also had open to it the filing of its claim as unsecured under Old Rule 13–302(e)(2):

> Unsecured claims, whether or not listed in the Chapter 13 Statement, must be filed within 6 months after the first date set for the first meeting of creditors in the Chapter 13 case. . . .

That kind of filing would afford Bank an advantage only if the value of its collateral —Levine's automobile—were less than the

---

**6.** During the period when most of the events relevant to the disposition of this appeal occurred, the Old Rules remained in effect. Indeed it was not until August 1, 1983 that the present Bankruptcy Rules ("New Rules") were adopted and made applicable to all cases then pending. Under New Rule 3003 a creditor in a Chapter 11 case need not file a proof of claim at all unless his claim (1) is not scheduled or (2) is scheduled as disputed, contingent or unliquidated.

amount of Levine's indebtedness. To the extent of such a shortfall, Bank's claim would be unsecured and Bank could recover on that unsecured claim only by filing a timely proof of claim. But that contingency could never occur, for Judge Eisen had required that Bank sell the automobile for *not less than* the amount of its claim.

All those possibilities, however, are really beside the mark. For the reasons stated in the next section of this opinion, this Court need not explore further the arcane interrelationships of the claim-filing rules.

### 2. *Status of Bank's Lien*

Serendipity has been at work here. For several weeks Levine (acting pro se) had done nothing to prosecute his appeal except to file it. Accordingly this Court had its decision in the works when Levine advised this Court's law clerk he was preparing a supporting memorandum for submission to this Court. This Court therefore held off its ruling to await that memorandum. During that brief waiting period our Court of Appeals has fortuitously provided current and dispositive authority for rejecting Levine's appeal on the precise ground on which this Court had already reached its own conclusion.

█ Just two weeks ago *In re Tarnow*, 749 F.2d 464 (7th Cir.1984) reversed a District Court's order that had extinguished a secured creditor's lien because of an admittedly untimely claim filing. *Tarnow* said (at 465, citations omitted):

A long line of cases, though none above the level of bankruptcy judges since the Bankruptcy Code was overhauled in 1978,[7] allows a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt.... Of course if there is some doubt whether the collateral is adequate for this purpose the creditor may

want to file a claim with the bankruptcy court, so that in the event the collateral falls short he will have a claim against the estate (though just as an unsecured creditor) for the shortfall. See 11 U.S.C. § 506(a). But unless the collateral is in the possession of the bankruptcy court (or trustee—but there was no trustee here), which it was not in this case, the secured creditor does not have to file a claim. See 1 Norton, Bankruptcy Law and Practice § 28.27, at p. 28–18 (1983). It would be no favor to either the debtor or the other creditors to force him to do so on pain of losing his lien; it would just mean (unless as here the creditor was careless, and forgot to file) adding another unsecured creditor to the list.

The wrinkle here is that the secured creditor did file a claim.... The [creditor's] claim was rejected for no other reason than that it was late, and this ground of rejection does not call into question the validity of the lien—unless rejecting a claim, on whatever ground, automatically rejects the lien that secures it. As a matter of principle we would be very surprised if it did (we are even more surprised, however, that there are no cases dealing with the question). The destruction of a lien is a disproportionately severe sanction....

*Tarnow* teaches it is wholly irrelevant whether or not Bank's claim filing was timely. In any case Bank's *lien* remained intact, and that entitles it to the escrow proceeds.

Only one issue remains that is not foreclosed by *Tarnow:* Levine's argument that confirmation of the Plan somehow extinguished the lien. That proposition is equally without merit. After all, Code § 1327 applies only to property of the Chapter 13 estate. Under Code § 541(a)(1) an estate becomes vested with an interest in property no greater than the debtor's—in the case of Levine's automobile, an interest subject to

---

7. [Footnote by this Court] Although this statement is literally correct in terms of judicial holdings, this Court's colleague Judge Prentice Marshall has recently adverted in dictum to the continuing vitality of the rule stated in *Tarnow's* first quoted sentence. *In re Evanston Motor Co.,* 26 B.R. 998, 1002 (N.D.Ill.1983).

Bank's lien. Upon confirmation of the Plan, Code § 1327(b) revested in Levine the estate's interest in the property—again an interest subject to the lien. And as for Levine's related assertion that Code § 1327(c) effectively frees the revested property of liens, that untenable notion is scotched by the succinct analysis of *In re Honaker*, 4 B.R. 415, 417 (Bankr.E.D.Mich. 1980):

> The language of Section 1327(c) is "free and clear of any *claim or interest*," (Emphasis Added). "Claim" is defined in the Code at Section 101(4). A "claim" is distinct from a "lien," which is defined in Section 101(28). The term "interest" is nowhere defined in the Code, but it would be odd if Congress had chosen that undefined term to mean "lien," when they could have used the defined term "lien" and avoided uncertainty. *Cf.* 5 Collier on Bankruptcy (15th Ed.), ¶ 1327.01. As one commentator has observed,
>
> > "... there appears to be no sound reason for lifting liens by operation of law at confirmation under Chapter 13." 5 Collier on Bankruptcy, (15th Ed.), ¶ 1327.01, p. 1327–5.

The reading of Section 1327 urged by Defendant would have the Debtor materially improve his financial position, by unencumbering pledged assets, though the simple expedient of passing his property through the estate. This result has little to recommend it.

Bank thus retained its lien on the funds held in the escrow account. It is therefore entitled to disbursement of those funds to satisfy Levine's debt to it.

 Bank is entitled as well to the interest that has accumulated on the sale proceeds since early 1981. In seeking relief from the automatic stay to permit the sale, Bank had sought access to its collateral to satisfy its secured indebtedness—and Judge Eisen had assured the automobile

would be sold for no less than $4,300. Once the sale was held, the freezing of the funds in escrow effectively deprived Bank of the use of the money, a loss of use compensable by distribution of the yield derived on the fund during the escrow period. With its lien having become transferred to the proceeds, Bank must be viewed as having owned the proceeds during the nearly four years the escrow account has existed. It has the right to receive the benefit of that ownership.[8]

### Conclusion

Judge Eisen's decision is affirmed. All escrow proceeds are ordered disbursed to Bank immediately.

---

8. Even were the holding of the funds in escrow deemed an effective continuation of the automatic stay, Bank would nevertheless be entitled to the interest as compensation for being stayed from enforcing its rights as a lienholder against the collateral. See *In re American Mariner Industries, Inc.,* 734 F.2d 426, 432–35 (9th Cir. 1984).