**In re Patricia K. BRADSHAW, Debtor.**

**Bankruptcy No. B–84–01049 C–13.**

United States Bankruptcy Court, M.D. North Carolina.

Sept. 22, 1986.

Kathryn L. Bringle, Winston-Salem, N.C., Chapter 13 standing trustee.

Herman L. Stephens of Baggett, Calloway, Phillips, Davis, Stephens, Peed & Brown, Winston-Salem, N.C., for debtor.

### MEMORANDUM OPINION

RUFUS W. REYNOLDS, Chief Judge.

This matter was heard August 26, 1986, on the debtor's objection to the motion of the Standing Trustee recommending release of the debtor's 1983 Toyota to the secured creditor Fidelity Federal Savings & Loan Association (hereinafter "FFS"). FFS filed a late proof of claim and the Standing Trustee recommended that the claim be disallowed and that the vehicle be released to FFS. The debtor objected to the release of the vehicle, contended that the security holder lost its lien by not filing a secured claim within the required time, and sought ownership of the automobile free and clear of the lien. This Court holds that FFS's lien continues on the vehicle and the vehicle is to be released to FFS in satisfaction of its claim against the debtor.

### FACTS

The debtor filed a Chapter 13 petition on September 18, 1984, and listed Fidelity Federal Savings & Loan as a creditor. The bank financed the purchase of the debtor's 1983 Toyota from the dealer Larry Smith Toyota and placed a lien on the vehicle's Certificate of Title.

The debtor's Chapter 13 plan was confirmed December 13, 1984. The plan provided for treatment of FFS in the event the bank filed a timely proof of claim. If FFS documented the security interest, the claim would be treated as secured. If FFS did not document its claim as secured, the claim would be treated as an unsecured claim. FFS did not file a timely proof of claim. On February 18, 1986, approximately 18 months after the Chapter 13 petition was filed, FFS filed a proof of claim for $10,073.42 and attached evidence of a perfected lien on the vehicle.

The automobile has been in storage during much of the Chapter 13 case. The debtor alleges that the creditor repossessed the vehicle on the day the petition was filed after notice of the filing and that the automobile was damaged during repossession. Subsequently, FFS authorized the debtor to obtain possession of the vehicle. The vehicle has been repaired at a cost in excess of $1700 and is currently being held by a mechanic pending payment to him for these repairs. The vehicle has been in storage approximately 16 to 18 months.

On June 12, 1986, the Standing Trustee filed a motion with the Court recommending that FFS's claim be disallowed as untimely filed and that the vehicle be released to FFS or its assignee. The debtor objected to the release of the vehicle to the creditor. The debtor contends that FFS's claim cannot be allowed, that FFS is bound by the confirmed plan as a creditor included in the plan, and that the vehicle vests in the debtor free and clear of all liens on the basis of Bankruptcy Code section 1327(c). This Court disagrees with the debtor's position and holds that the secured creditor's lien remains on the vehicle. Since the creditor did not file a timely proof of claim for the unsecured portion of the debt as required by Bankruptcy Rule 3002, any deficiency will be discharged upon completion of the Chapter 13 plan.

## ISSUE

Whether failure of the secured creditor Fidelity Federal Savings and Loan to timely file a proof of claim in the Chapter 13 case results in the avoidance of the creditor's lien in its entirety and vesting of the property with the debtor free and clear of the FFS lien?

## DISCUSSION

This Court holds that failure of the secured creditor to timely file a proof of claim in the Chapter 13 proceeding does not void the creditor's lien. The creditor lost the opportunity to file an unsecured claim for the deficiency since the Bankruptcy Rules clearly define the time for filing claims, but the lien continues on the collateral.

The Bankruptcy Code provides for a determination of the creditor's secured status in section 506. Section 506(d) provides for the avoidance of liens in certain situations. In the case at bar, the debtor filed Chapter 13 on September 18, 1984. For cases filed prior to October 8, 1984, section 506(d) provided

(d) To the extent that a lien secured a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

While this language is somewhat confusing, *Collier* notes that section 506(d)(1) was interpreted to mean that a party in interest needed to request a determination of the allowability of a secured claim and have the Court determine the allowance or disallowance of the claim for a lien to be avoided under section 506(d). 3 Collier on Bankruptcy ¶ 506.07 at 506–58 (15th ed. 1986).

Subsequently, Congress amended section 506(d) to provide that failure to file a proof of claim would not be grounds for avoidance of a lien. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law No. 98–353. Section 506(d)(2) now provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

While this amendment was not effective when the Bradshaw case was filed, the amendment does suggest that Congress had never intended for failure to file a claim to be a basis for avoidance of a lien. One would not expect tardy filing to be treated more severely than a failure to file. *See In re Tarnow* 749 F.2d 464, 466–467 (7th Cir.1984).

Historically, a long line of cases provided that the secured creditor could rely on his lien and that he need not file a claim in bankruptcy to protect his lien. The Seventh Circuit recognized this principle in *In re Tarnow*, a Chapter 11 case, in which the secured creditor filed a late proof of claim. The Court stated

A long line of cases … allows a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt.

749 F.2d 464, 465 (citing a long line of cases including *Long v. Bullard*, 117 U.S. 617, 620–621, 6 S.Ct. 917–918, 229 L.Ed. 1004 (1886); *Louisville Joint Stock Land Bank v. Radford* 295 U.S. 555, 582–83, 55 S.Ct. 854, 859–60, 79 L.Ed. 1593 (1935); and *In re Honaker*, 4 B.R. 415, 416 and n. 3 (Bankr.E.D.Mich.1980), (a Chapter 13 case). The Seventh Circuit recognized that the creditor does need to file a claim to protect his unsecured claim if a deficiency results.

The *Tarnow* Court considered whether extinction of a lien should result from late filing. The Court found that this would be an unusually severe sanction for such a failure especially when the only party hurt by the late filing was the creditor. The Court noted that in *Tarnow* the only reason for disallowance of the claim by the Bankruptcy Court was late filing and not a court determination that the lien was invalid. *Id.* at 465. *See also In re Levine* 45 B.R. 333, 337 (N.D.Ill.1984) (following *Tarnow* in a Chapter 13 case).

Thus, both an amended section 506(d) and historical precedent suggest that the lien should survive bankruptcy, but the debtor argued that section 1327(c) required a different result. The debtor argued that section 1327(c) should be interpreted to allow for avoidance of a secured creditor's lien if the creditor were mentioned in the plan and failed to timely file a proof of claim even if the creditor got no distribution under the plan. Does section 1327(c) change historical precedent so that failure to file a claim within the plan's time limits results in destruction of the secured creditor's lien?

Section 1327 provides

(a) *The provisions of a confirmed plan bind* the debtor and *each creditor, whether or not the claim* of such creditor *is provided for by the plan,* and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan vests all of the property of the estate in the debtor.*

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is *free and clear of any claim or interest of any creditor provided for by the plan.* (Emphasis added.)

The debtor argued that she should have the automobile free of FFS's lien because the late filing creditor was bound by the plan, her plan was confirmed, section 1327(b) provides that "confirmation of a plan vests all of the property of the estate in the debtor," and subsection (c) provides that this property is "free and clear of any claim or interest of any creditor provided for by the plan." The debtor argued that this language means she should receive the property free of the secured creditor's lien.

This Court disagrees with the debtor's interpretation of the statute.

Several other Bankruptcy Courts have considered the wording of section 1327 and its meaning. In *In re Honaker*, 4 B.R. 415, 416–417 (Bankr.E.D.Mich.1980), the leading case, the Court considered the meaning of section 1327(b) and the meaning of "property of the estate." In *Honaker* the creditor had a security interest in two snowmobiles and a tractor and filed its claim late. The *Honaker* court noted that "the property of the estate" is defined by section 541(a)(1) such that "the estate was vested with the same interest in the collateral that the debtor had, i.e., an interest subject to a valid security interest." *Id.* at 416–417. *Seé In re Simmons*, 765 F.2d 547, 555 (5th Cir.1985); *Levine*, 45 B.R. 337–338. Section 1327(b) provides that the "property of the estate" is vested in the debtor upon confirmation. Thus, confirmation does not expand the debtor's interest beyond that of the estate.

In addition, the debtor argued that section 1327(c) provided that the debtor is to receive property free and clear of the creditor's claims or interests if the creditor is provided for by the plan. The debtor argued that the secured creditor's lien is synonomous with a "claim" or "interest." The *Honaker* court considered the meaning of "claim" and "interest" and concluded that these were different from a "lien." The Court noted that the Code defines "claim" separately from that of a "lien." A "claim" defined at section 101(4) means a "right to payment, whether or not such right is ... secured, or unsecured" and a "lien" defined at section 101(31) means a "charge against or interest in property to secure payment of a debt or performance of an obligation." While "interest" is not defined in the Code, the *Honaker* Court concluded it did not mean "lien" in section 1327(c). The Court concluded that section 1327(c) did not require invalidation of the secured creditor's lien due to the late filing. *Contra* 3 Norton Bankr.L. & Prac. section 74.06 at 173–179 (Annual Supp.1985); *In re Pettit*, 18 B.R. 832, (Bankr.S.D.Ohio 1982).

This Court recognizes that the debtor could take free and clear of the creditor's claim, i.e., the claim that could have been allowed in bankruptcy had the creditor timely filed a proof of claim. For example, the creditor may have been entitled to interest on the secured debt or to a deficiency claim, with a timely filed claim, and the debtor could take free of such a claim if the creditor filed late. But the portion of the "claim" defined as the lien which attached to the collateral never became part of the bankruptcy estate, thus did not vest with the debtor at confirmation, and passes through the bankruptcy.

The debtor also argued that "provided for" in the plan could mean including the creditor in the plan on the condition that the creditor timely filed a proof of claim even if the creditor never filed and never received any payment on its claim. Since historically a secured creditor could look to its collateral for payment on its claim, it would seem that a debtor who wants to retain secured property must "provide for" the creditor at least to the value of the collateral if the debtor hopes to retain the property.

Several cases have considered how a secured creditor must be "provided for" in the plan. In *In re Rhoades*, 34 B.R. 168, 169 (Bankr.Vt.1983), the Chapter 13 plan provided that creditors who did not file a proof of claim would receive "zero payment." The Court concluded that "zero payment" did not satisfy the requirement of being "provided for" by the plan. In *In re Hines*, 20 B.R. 44, 49 (Bankr.S.D.Ohio 1982), the Court concluded that "if the plan does not provide for payment to the creditor in an amount equal to the creditor's security, then the lien should survive the Chapter 13 discharge." Thus, either the debtor provides for the value of the security or the creditor's right to the value of the security survives bankruptcy.

In the case at bar, the debtor is attempting to improve its position simply because a secured creditor filed its claim late. The debtor has not been harmed by the late filing. Clearly, the car is not necessary as

transportation since it has been in storage 16–18 months. The creditor has been harmed by his failure to file a timely proof of claim. The car has depreciated approximately $2000 since confirmation and the mechanic's lien and storage costs exceed $1700. The debtor alleged that the car was damaged during repossession. The creditor lost the opportunity to file an unsecured claim for any deficiency, but this Court feels that the secured creditor retains its lien on the vehicle and may look to the collateral for satisfaction of the secured portion of its claim.

The debtor also argued that FFS did not have a provable claim because the lender had been paid out of the dealer's reserve account. FFS presented evidence of a loan agreement for the purchase of the car between the debtor and the dealer and a first lien in favor of FFS noted on the Certificate of Title. The Court will release the vehicle to FFS, the dealer, the repairman, and any other lienholders as their interest may appear.

Let an order be entered agreeable with this Memorandum Opinion.

### ORDER

Pursuant to the Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that the Standing Trustee's motion to disallow the claim of Fidelity Federal Savings & Loan Association in the amount of $10,073.42 and pay no funds to the secured creditor is approved.

IT IS FURTHER ORDERED that the 1983 Toyota be released to the first lienholder, Fidelity Federal Savings & Loan Association, the dealer Larry Smith Toyota, the repairman, and any other lienholders as their interest appear.