Affirmed by pubhshed opinion. Judge WILKINSON wrote the opinion, in which Judge HAMILTON joined. Senior Judge HEANEY wrote a dissenting opinion.
*91 OPINION
WILKINSON, Circuit Judge:
In this case we must address the effect of a bankruptcy court’s confirmation of a Chapter 13 wage earner plan on a creditor’s liens. Specifically, appellants contend that liens on their primary residence were avoided because the creditor received notice (by means of a copy of the proposed plan) that the underlying debt was being treated as unsecured but neither objected to confirmation of the plan nor filed a proof of its secured claim. Because we believe that appellants failed to take appropriate steps to avoid the creditor’s liens, we hold that those liens survived confirmation. Accordingly, we affirm the judgment of the district court.
I.
From 1969 through 1985, appellants Walter and Loraine Hanson executed four promissory notes secured by deeds of trust on their Newport News residence. In 1985, the Hansons defaulted on the first two notes, thereby placing their residence at risk of foreclosure. In order to forestall foreclosure, the Hansons entered into a financing agreement with a non-party, Charles Car-rithers, who was apparently acting on behalf of appellee Cen-Pen Corporation. Pursuant to this agreement, the Hansons executed a note in favor of Carrithers for approximately $58,000 plus interest; the agreement provided that Carrithers succeeded to the rights and remedies under the second and third deeds of trust.
In 1985 and 1986, Mr. and Mrs. Hanson filed separate Chapter 7 bankruptcy petitions and received discharges. In November 1986, Mr. Hanson and the trustee of Mrs. Hanson’s bankruptcy estate filed suit in federal district court against Carrithers and Cen-Pen, alleging that the 1985 financing agreement violated the Truth in Lending Act, 15 U.S.C. § 1635, and regulations enacted pursuant thereto. In April 1987, the parties entered a settlement agreement resolving their disputes. According to this agreement, the Hansons were to refinance their outstanding indebtedness to Carrithers and Cen-Pen within 90 days. The settlement agreement included a release provision, which stated in pertinent part:
Except as [to] the obligations created hereunder, or provided herein ... Cen-Pen, and Carrithers ... and the Trustee and the Hansons ... do hereby mutually release and forever discharge ... any claims Cen-Pen [or] Carrithers ... may have against the Hansons or the Trustee in connection with the second Deed of Trust, third Deed of Trust, or the loans.
Cen-Pen, however, believed the Hansons never fulfilled their part of the agreement because they neither obtained alternative financing nor executed any documents to refinance the $58,000 debt through Cen-Pen or Carrithers. Cen-Pen subsequently brought suit in the Circuit Court for the City of Newport News seeking entry of an order requiring the Hansons to execute a note and deed of trust or, alternatively, a determination that Cen-Pen retained valid liens against the Hanson residence.
In September 1992, the Hansons filed a Chapter 13 bankruptcy petition; the state court action was accordingly stayed. The Hansons served a Chapter 13 plan upon their creditors in October. In reliance on the release contained in the settlement agreement, the plan treated Cen-Pen as an unsecured creditor, entitling it to approximately 25 percent of its claim against the Hansons. The plan required creditors to submit proofs of claim and objections to the plan within specified time periods; it further provided that the plan would be automatically confirmed if no such objections were received. Lastly, ¶6-10^) provided that “[a]ll claims to be allowed must be filed; to the extent that the holder of a secured claim does not file a proof of claim, the lien of such creditor shall be voided upon the entry of the Order of Dis-charge_” Cen-Pen did not file an objection to the plan, which was accordingly confirmed.[1] All creditors submitting allowable claims were paid pursuant to the plan, and *92 the Hansons received their discharge in December 1993.
On February 2,1994, Cen-Pen filed a complaint in the bankruptcy court to determine the validity of its liens on the Hanson residence. At a June hearing, Cen-Pen maintained that the release provision in the April 1987 settlement agreement did not destroy its rights under the deeds of trust. The Hansons responded, first, that the settlement agreement plainly released them from any obligations under the deeds of trust, and second, that confirmation of the plan without objection from Cen-Pen invalidated the liens pursuant to § 1327(b) and (c) of the Bankruptcy Code.
The Bankruptcy Court declined to address the effect of the settlement agreement on Cen-Pen’s security. It did, however, conclude that even assuming Cen-Pen possessed valid liens as of the date of the Hansons’ petition, confirmation of the plan vested the residence in the Hansons free and clear of the liens.
The district court disagreed. It held that confirmation of the plan simply vested in the debtors the same interest in the residence that they had before filing a petition for bankruptcy relief — that is, an interest subject to Cen-Peris liens. The Hansons appeal.[2]
II.
A.
On appeal, the Hansons insist that, under the terms of 11 U.S.C. § 1327, confirmation of their Chapter 13 plan voided the liens held by Cen-Pen. Section 1327, entitled “Effect of Confirmation,” provides:
(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
(e) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.
The Hansons note that Cen-Pen received a copy of the plan, which treated it as an unsecured creditor, but failed to object prior to confirmation. Nor did Cen-Pen file a proof of claim, despite notice in ¶ B-10(A) of the plan that such failure would result in avoidance of its liens. Confirmation of the plan, appellants contend, is res judicata by virtue of § 1327 as to Cen-Peris present claim that it continues to hold valid liens against the residence.
We disagree. Although at first blush § 1327 appears to support appellants’ argument, we are persuaded that other provisions of the Bankruptcy Code and Rules undercut it. To begin with, appellants’ argument ignores the general rule that liens pass through bankruptcy unaffected. See, e.g., Dewsnup v. Timm, 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). A bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor’s property. See Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). For a debtor to extinguish or modify a lien during the bankruptcy process, some affirmative step must be taken toward that end. See, e.g., Lee Servicing Co. v. Wolf (In re Wolf), 162 B.R. 98, 107 n. 14 (Bankr.D.N.J.1993); In re Glow, 111 B.R. 209, 221 (Bankr.N.D.Ind.1990). Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation. In re Honaker, 4 B.R. 415, 417 (Bankr.E.D.Mich. *93 1980). The simple expedient of passing their residence through the bankruptcy estate could not vest in the Hansons a greater interest in the residence than they enjoyed prior to filing their Chapter 13 petition. Id.
Here the Hansons did not take a sufficient “affirmative step” to avoid Cen-Pen’s liens. Bankruptcy Rule 7001(2) expressly requires initiation of an adversary proceeding “to determine the validity, priority, or extent of a lien or other interest in property,” with one exception not applicable here. The procedural requirements of such an action, which include, inter alia, the filing of a complaint and service of a summons, are set out in the Bankruptcy Rules. Bankruptcy Rule 7004, for instance, governs the procedures for service of process in adversary proceedings. See In re Linkous, 990 F.2d 160, 162 (4th Cir.1993) (adequate notice to affected secured creditor is prerequisite to according preclusive effect to confirmation order under § 1327).
The Hansons’ rebanee on § 1327 fails to appreciate the import of these Rules. Because confirmation of a Chapter 13 plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters, see In re Beard, 112 B.R. 951, 955-56 (Bankr.N.D.Ind.1990) (contrasting adversary proceedings with contested matters), confirmation generally cannot have preclusive effect as to the validity of a lien, which must be resolved in an adversary proceeding. In other words, “[i]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect.... [A] secured creditor is not bound by the terms of the confirmed plan with respect to limitations upon the scope or validity of the lien securing its claim.” Id. at 956.
Confirmation of the Hansons’ Chapter 13 plan thus did not establish that Cen-Pen holds no valid liens as against the Han-sons’ residence. This is true despite the fact that Cen-Pen neither filed a proof of claim nor objected to confirmation of the plan. Id. Initiation of an adversary proceeding is a prerequisite to challenging “the validity or existence” of a lien against property of the estate in a Chapter 13 proceeding, id., and no such proceeding was initiated here. Where such a proceeding “is required to resolve the disputed rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed.” Id. at 955 (citing In re Commercial Western Finance Corp., 761 F.2d 1329, 1336-38 (9th Cir.1985)).
B.
The Hansons point to ¶ B-10(A) as support for their contention that confirmation of their Chapter 13 plan voided Cen-Pen’s liens. Paragraph B-10(A), which appeared on page 4 of appellants’ proposed plan, provided as follows:
All claims to be allowed must be filed; to the extent that the holder of a secured claim does not file a proof of claim, the lien of such creditor shall be voided upon the entry of the Order of Discharge in this case.
We do not think, however, that the Hansons’ inclusion of this boilerplate language in the plan avoided the liens, despite the fact that Cen-Pen did not file a proof of claim.
Several sections of the Code support this view. Section 506(d)[3] voids a lien that secures a claim against the debtor which is not an allowed secured claim, unless the claim is not treated as an allowed secured claim simply because the creditor has elected not to file a proof of claim. 11 U.S.C. § 506(d)(2). Subsection (2) was intended “to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor.” In re Tarnow, *94 749 F.2d 464, 467 (7th Cir.1984) (quoting S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983)); see also In re Levine, 45 B.R. 333, 337 (N.D.Ill.1984).
We also note that 11 U.S.C. § 501 provides for filing proofs of claim but it clearly does not make such a filing mandatory. In re Thomas, 883 F.2d 991, 996 (11th Cir.1989); cert. denied sub nom. Thomas v. Southtrust Bank of Alabama, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). The language in ¶6-10^) of the Hansons’ plan attempts to circumvent the clear import of this section. Because an unchallenged lien survives the bankruptcy discharge of a debt- or, however, a creditor with a loan secured by a lien on the debtor’s property is free to ignore the bankruptcy proceeding and look solely to the lien for satisfaction of the debt. See Tarnow, 749 F.2d at 465 (citing cases); Washington v. Nissan Motor Acceptance Corp. (In re Washington), 158 B.R. 722, 723-24 (Bankr.S.D.Ohio 1993) (language in plan cancelling liens of secured creditors who do not file proofs of claim cannot override § 506(d)(2)). In sum, the simple fact that Cen-Pen did not file a proof of claim cannot, without more, result in avoidance of its liens.
Moreover, the fact that Cen-Pen was listed as an unsecured creditor in the bankruptcy schedules does not suffice to avoid its liens. In re Simmons, 765 F.2d 547, 554-56 (5th Cir.1985). “Even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured.” Beard, 112 B.R. at 954. The Hansons should not be entitled to eliminate otherwise valid liens on their residence simply by characterizing Cen-Pen’s claims in the plan as unsecured. Simmons, 765 F.2d at 556. Nor does the combination of Cen-Pen’s treatment as an unsecured creditor plus its failure to file a proof of claim avoid its liens. See, e.g., In re Willey, 24 B.R. 369, 371 (Bankr.E.D.Mich.1982).
The Hansons insist, however, that ¶ B-10, together with the listing of Cen-Pen as an unsecured creditor, “provided for” Cen-Pen’s claim sufficiently to satisfy § 1327(c) and vest title to the residence in the Hansons free and clear of Cen-Pen’s liens. We believe, to the contrary, that § 1327(c) does not permit the result appellants seek. As a general matter, a plan “provides for” a claim or interest when it acknowledges the claim or interest and makes explicit provision for its treatment. In re Work, 58 B.R. 868, 871 (Bankr.D.Or.1986). If a Chapter 13 plan does not address a creditor’s lien (for instance, by expressly providing for payment of an allowed secured claim and cancellation of the lien), that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding, as discussed above. Wolf, 162 B.R. at 106, 108 n. 16. Several courts have held that a plan “provides for” the lien held by a secured creditor only when it provides for payment to the creditor in an amount equal to its security. In re Bradshaw, 65 B.R. 556, 559 (Bankr.M.D.N.C.1986); In re Hines, 20 B.R. 44, 49 (Bankr.S.D.Ohio 1982).
Bradshaw expressly rejected the argument, similar to the one the Hansons press here, that inclusion of a creditor in a plan “on the condition that the creditor timely file[ ] a proof of claim even if the creditor never file[s] and never receive[s] any payment on its claim” amounts to “provision for” the creditor. Bradshaw, 65 B.R. at 559. We think that decision soundly reasoned. The Hansons’ plan nowhere mentioned or otherwise acknowledged Cen-Pen’s liens, and certainly did not “provide for” treatment of the liens or full payment of the underlying claim. Because listing Cen-Pen as an unsecured creditor would have entitled it only to approximately 25 percent of its claim, the plan did not “provide for” Cen-Pen’s claim and its liens survived the Chapter 13 confirmation.[4]
*95 in.
For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

. Cen-Pen claims that it did in fact submit a proof of claim; the bankruptcy court, however, never received it.

. As neither the bankruptcy court nor the district court resolved the question whether Cen-Pen does in fact hold valid liens against the Hansons’ residence, preferring to allow the parties to litigate the effect of the 1987 settlement agreement in state court, we likewise assume without deciding, for purposes of this appeal, that Cen-Pen retained valid liens on the subject property. The state court action has been stayed until this bankruptcy matter is decided.

. Section 506(d) provides:
To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
11 U.S.C. § 506(d).

. Because a creditor’s liens pass through the bankruptcy process unimpaired in this situation, the debtor remains obligated on the underlying debt. A debtor's payments may, however, be taken into account in determining a debtor's disposable income, which in turn determines the monthly amount to be paid under the plan. See, e.g., Official Bankruptcy Form 6, Schedule J (Current Expenditures of Individual Debtors) (including "rent or home mortgage payment” in debtor’s average monthly expenses).