**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1016**

CHRISTOPHER M. COVERT; THOMAS E. HAWORTH; CAROL J. HAWORTH; KIFLE AYELE; DWAN L. BROWN,

            Plaintiffs – Appellants,

      v.

LVNV FUNDING, LLC; RESURGENT CAPITAL SERVICES LIMITED PARTNERSHIP; SHERMAN ORIGINATOR LLC,

            Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Deborah K. Chasanow, Chief District Judge.  (8:13-cv-00698-DKC)

Argued:  December 11, 2014          Decided:  March 3, 2015

Before NIEMEYER, SHEDD, and KEENAN, Circuit Judges.

Affirmed by published opinion.  Judge Shedd wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**ARGUED:** Laura J. Margulies, LAURA MARGULIES & ASSOCIATES, LLC, Rockville, Maryland, for Appellants.  Ronald S. Canter, LAW OFFICES OF RONALD S. CANTER, LLC, Rockville, Maryland, for Appellees.  **ON BRIEF:**  Lawrence P. Block, Janet M. Nesse, STINSON LEONARD STREET LLP, Washington, D.C., for Appellants.

SHEDD, Circuit Judge:

Christopher M. Covert, Thomas E. Haworth, Carol J. Haworth, Kifle Ayele, and Dwan L. Brown (collectively "Plaintiffs") each separately filed a petition for individual bankruptcy under Chapter 13 in Maryland in 2008. LVNV Funding, LLC ("LVNV") and its affiliated companies (collectively "Defendants") held an unsecured claim against each Plaintiff and filed proofs of those claims in each proceeding.[1] Each Chapter 13 plan was approved, the Defendants' claims were allowed, and each Plaintiff made payments on these claims. In March 2013, the Plaintiffs filed this putative class action lawsuit in the District of Maryland, alleging that the Defendants had violated the federal Fair Debt Collection Practices Act (FDCPA) and various Maryland laws by filing these proofs of claim without a Maryland debt collection license. The Defendants moved to dismiss and the court granted the motion, finding that the state common law claims were barred by res judicata and that the federal and state statutory claims failed to state a claim because filing a proof of claim does not constitute an act to collect a debt. For the reasons stated below, we affirm the dismissal of all claims, but we do so on res judicata grounds.

---

[1] A proof of claim is a form filed by a creditor in a bankruptcy proceeding that states the amount the debtor owes to the creditor and the reason for the debt.

2

I.

In 2008, each Plaintiff filed a petition for individual bankruptcy under Chapter 13 in the Bankruptcy Court for the District of Maryland. LVNV had acquired a defaulted debt against each Plaintiff from Sherman Originator, LLC, and LVNV then filed a proof of unsecured claim based on these debts in each bankruptcy proceeding through its servicer, Resurgent Capital Services Limited Partnership. The bankruptcy court confirmed a plan in each proceeding that provided for unsecured claims to be paid in pro rata amounts. The Defendants' claims were allowed, and they received payments from the Chapter 13 Trustees on these claims. At all relevant times, none of the Defendants was licensed to do business as a debt collection agency in Maryland.

In March 2013, the Plaintiffs filed this lawsuit in the District of Maryland, alleging that the Defendants had violated the FDCPA by filing proofs of claim without a Maryland debt collection license. The FDCPA defines a "debt collector" as "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Under the FDCPA, debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he threat to take any action that cannot

3

legally be taken," 15 U.S.C. § 1692e(5). Under the Maryland Code, it is a misdemeanor for a person to "knowingly and willfully do business as a collection agency in the State unless the person has a license." Md. Code Ann., Bus. Reg. § 7-401. The Plaintiffs allege that because the Defendants filed claims in the bankruptcy proceedings without a license, the Defendants were not legally entitled to collect those debts and thus took an "action that cannot legally be taken" in violation of the FDCPA. The Plaintiffs also asked for an injunction deeming the Defendants' proofs of claim invalid and instructing the Defendants to return to the Plaintiffs all money paid pursuant to those claims.[2]

Plaintiff Covert filed several additional Maryland state law claims. Specifically, Covert alleged unjust enrichment, violations of the Maryland Consumer Debt Collection Act (MCDCA), and violations of the Maryland Consumer Protection Act (MCPA).

The Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims for failure to state a claim upon which relief could be granted. The district court granted the

---

[2] The Plaintiffs also asserted a claim seeking attorneys' fees and reasonable expenses incurred in litigating this suit. Because a request for expenses and attorneys' fees is not a separate claim, but rather a request for a particular form of relief, this request necessarily fails because the underlying action is barred by res judicata. We therefore adopt the reasoning of the district court dismissing this claim.

4

motion.  Covert v. LVNV Funding, LLC, No. DKC 13-0698, 2013 WL 6490318 (D. Md. Dec. 9, 2013).  It held that the Maryland unjust enrichment claim was barred by res judicata, but that the FDCPA, MCDCA, and MCPA claims could not be barred by res judicata absent an adversary proceeding in each bankruptcy action, which had not occurred.  Nonetheless, the district court dismissed these statutory claims on the merits because it found that filing a proof of claim is not a "collection activity" within the meaning of those statutes.  The Plaintiffs timely appealed.

## II.

We review de novo the district court's dismissal of a complaint for failure to state a claim under 12(b)(6).  United States ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 700 (4th Cir. 2014).  Federal law governs the res judicata effect of earlier bankruptcy proceedings.  See Grausz v. Englander, 321 F.3d 467, 472 (4th Cir. 2003) ("We look to res judicata principles developed in our own case law to determine whether an earlier federal judgment, including the judgment of a bankruptcy court, bars a claim asserted in a later action.").

"Under res judicata principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication."  In re Varat Enters., Inc., 81 F.3d 1310, 1314-15

5

(4th Cir. 1996). As we have applied it, the doctrine of res judicata encompasses two concepts: claim preclusion, which bars later litigation of all claims that were actually adjudicated or that could have been adjudicated in an earlier action, and issue preclusion, which bars later litigation of legal and factual issues that were "actually and necessarily determined" in an earlier action. Id. at 1315 (internal citation omitted). Rather than attempting to draw a sharp distinction between these two aspects here, we conduct our analysis under the general res judicata framework, as has been our practice in bankruptcy cases. We have held that a prior bankruptcy judgment has res judicata effect on future litigation when the following three conditions are met:

> 1) [T]he prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

Id. All three requirements are met here.

The first requirement is easily satisfied because confirmation of a bankruptcy plan is a final judgment on the merits. See, e.g., id. ("[T]he [bankruptcy plan] confirmation order constitutes a final judgment on the merits with res judicata effect."); In re Linkous, 990 F.2d 160, 162 (4th Cir. 1993) (same). 11 U.S.C. § 1327(a) states the general rule that

6

"[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." It is this provision that gives plan confirmation the res judicata effect of a final judgment. Linkous, 990 F.2d at 162; see also In re Beard, 112 B.R. 951, 954 (Bankr. N.D. Ind. 1990) ("The Bankruptcy Code gives confirmation a binding effect, through 11 U.S.C. § 1327.").

The second res judicata requirement is also satisfied because both the Plaintiffs and the Defendants in this action were parties to the earlier Chapter 13 plan confirmation proceedings. Self-evidently, each Plaintiff participated in the confirmation proceedings for his own bankruptcy plan. See Varat, 81 F.3d at 1316 n.6 ("A party for the purposes of former adjudication includes one who participates in a ... plan confirmation proceeding."). Here, the Defendants were also parties to these proceedings because of their financial interest in the amount allotted to satisfy unsecured claims. See Grausz, 321 F.3d at 473 ("In the bankruptcy context a party in interest is one who has a pecuniary interest in the distribution of assets to creditors."). See also In re Snow, 270 B.R. 38, 40 (D. Md. 2001) (holding that both debtor and creditor were

7

parties to Chapter 13 plan confirmation for res judicata purposes).

The third res judicata condition requires that Plaintiffs' claims be "based upon the same cause of action involved in" the plan confirmation proceedings. Varat, 81 F.3d at 1315. Although we have said that "no simple test exists to determine whether claims are based on the same cause of action for claim preclusion purposes," Grausz, 321 F.3d at 473 (quoting Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999)), generally, "claims are part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts," id. at 473 (quoting Varat, 81 F.3d at 1316).

Applying these principles, it is clear that the Plaintiffs' current claims are based upon the same cause of action as the Defendants' claims in the confirmed bankruptcy plans. To prove his unjust enrichment claim, Covert would have to show that the Defendants had accepted and retained a benefit under inequitable circumstances, see Hill v. Cross Country Settlements, LLC, 936 A.2d 343, 351 (Md. 2007), because the claim on which he had paid the Defendants was procedurally invalid. Similarly, to establish their claims for reimbursement and injunctive relief, Covert and the other Plaintiffs would have to show that they made payments on claims that are invalid because they were

8

illegally filed.  Finally, to succeed on their statutory claims for damages under the FDCPA, MCDCA, and MCPA, the Plaintiffs would need to show that these statutes prohibited the Defendants from filing the proofs of claim.  A finding for the Plaintiffs on any of these claims, therefore, would entail a holding that the Defendants' proofs of claim are invalid, which would directly contradict the bankruptcy court's plan confirmation order approving those proofs of claim as legitimate.

We have held, in fact, that even claims that do not directly contradict confirmed orders, but merely "assert rights that are inconsistent with" those orders, are sufficient to satisfy the third res judicata requirement.  Varat, 81 F.3d at 1317.  See also Grausz, 321 F.3d at 475 (debtor's malpractice action was precluded by bankruptcy court's prior order which had allowed firm's fees because a successful "malpractice action at this stage could impair rights accorded the ... firm in the final fee order") (internal citation omitted).  Our sister circuits share this view that "once a bankruptcy plan is confirmed, its terms are not subject to collateral attack" through suits that raise claims inconsistent with the confirmed plan.  Adair v. Sherman, 230 F.3d 890, 894 (7th Cir. 2000) (dismissing post-confirmation FDCPA action alleging that creditor had inflated the amount of its claim).  See also, e.g., In re Szostek, 886 F.2d 1405, 1413 (3d Cir. 1989) (creditor

9

could not challenge amount of claim in confirmed plan, even though a hearing to consider a Truth in Lending Act challenge to that claim amount had been scheduled before the plan was confirmed). In sum, because all of the Plaintiffs' claims implicitly ask the district court to reconsider the provisions of the confirmed plans, they are based on the same cause of action as the plan confirmation orders. Accordingly, all three requirements are satisfied and the Plaintiffs' claims are barred by res judicata.

III.

Res judicata bars not only those claims that were actually raised during prior litigation, but also those claims that could have been raised, and the Plaintiffs in this case did indeed have the opportunity to raise their statutory claims for relief under the FDCPA, the MCDCA, and the MCPA during the bankruptcy proceedings. The Plaintiffs, as debtors in their own bankruptcy proceedings, could have objected to LVNV's proofs of claim at the time they were filed on the basis that they violated these consumer protection statutes. See 11 U.S.C. § 502(a)-(b)(1) (if a party in interest objects to a proof of claim, the bankruptcy court will hold a hearing and will determine whether the claim is "unenforceable against the debtor ... under any ... applicable law"); see also Sampson v. Chase Home Finance, 667 F.

10

Supp. 2d 692, 696-67 (S.D.W.V. 2009) (plaintiffs' consumer protection challenges to allowed claim were barred by res judicata after plan was confirmed because the challenges could have been raised during the bankruptcy proceedings). The Plaintiffs could also have brought their affirmative claims for damages during the bankruptcy process under Federal Rule of Bankruptcy Procedure 7001(1), which provides that "a proceeding to recover money or property" may be brought as an adversary action. But the Plaintiffs were not free to raise statutory objections after the court had entered its confirmation order when those objections were known or should have been known to them during the bankruptcy proceedings. See Varat, 81 F.3d at 1317. See also U.S. Dept. of Air Force v. Carolina Parachute Corp., 907 F.2d 1469, 1473 (4th Cir. 1990) (government, as creditor, could not bring post-confirmation statutory challenge to plan's assignment of government's contract with debtor, even though the government had already begun court proceedings to terminate the contract); Grausz, 321 F.3d at 474 (res judicata barred debtor's malpractice claim after fee order because "by the time the bankruptcy court entered the final fee order, [debtor] knew or should have known there was a real likelihood that he had a malpractice claim against the firm.").

Here, Plaintiffs do not assert that any information necessary to make out their statutory claims was unavailable to

11

them at the time their plans were confirmed. Accordingly, Plaintiffs should have raised these statutory claims during the plan confirmation hearings, and their failure to do so means that these claims are barred by res judicata.[3] See Varat, 81 F.3d at 1317 ("When all of the requirements for claim preclusion are satisfied, the judgment in the first case acts as an absolute bar to the subsequent action with regard to every claim which was actually made ... and those which might have been presented.").

One of the core purposes of bankruptcy is to collect all of "the debtor's assets for equitable distribution amongst creditors." Kuehner v. Irving Trust Co., 299 U.S. 445, 452

---

[3] We note that the Plaintiffs failed to raise a claim for equitable relief under 11 U.S.C. § 502(j), which states that "[a] claim that has been allowed ... may be reconsidered for cause," until oral argument in this case. We thus consider this argument waived. See Equal Rights Center v. Niles Bolton Assocs., 602 F.3d 597, 604 n.4 (4th Cir. 2010) (arguments not raised in appellant's opening brief are deemed waived). We also note, however, that the burden of establishing cause for reconsideration under 502(j) rests with the moving party, In re Starlight Group, LLC, 515 B.R. 290, 293 (Bankr.E.D.Va. 2014), and "the clearest cause for reconsideration is the discovery, subsequent to allowance, of new relevant facts or evidence that could not have been discovered at an earlier stage, or the discovery of clear error in the order of allowance," In re Gold & Silversmiths, Inc., 170 B.R. 538, 545 (Bankr. W.D.N.Y. 1994) (quoting Collier on Bankruptcy 14th Ed., ¶ 57.23(3)). Here, the Plaintiffs freely admit that no new relevant facts have come to light since their plans were confirmed, and they allege no clear error in the confirmation order. As a result, they would be unable to meet their burden of establishing cause for reconsideration under § 502(j).

(1937).  Were we to hold that proofs of claim are subject to post-confirmation challenge, we would risk undermining this purpose by creating an incentive for debtors to enrich themselves at the expense of their creditors.  Debtors would be motivated to refrain from pursuing claims for monetary damages until after a plan has been confirmed in order to obtain additional post-plan assets that would not be subject to distribution in bankruptcy.  The only recourse for creditors in this situation would be to petition the court to revoke the discharge order based on a showing of fraud under 11 U.S.C. § 727(d).  In the majority of cases, however, it is unlikely that a showing of fraud could be made, leaving the creditors without a remedy and frustrating bankruptcy's goal of collecting and equitably distributing all of a debtor's assets.

Moreover, allowing these kinds of post-confirmation collateral attacks on a bankruptcy plan's terms would "destroy the finality that bankruptcy confirmation is intended to provide." Adair, 230 F.3d at 895. See also Grausz, 321 F.3d at 475 (allowing debtor's malpractice action after confirmation of final attorneys' fees order would "undermine a fundamental purpose of the doctrine of res judicata: ... encouraging reliance on adjudication") (internal citation omitted).  Thus, allowing the kinds of post-confirmation actions that the

13

Plaintiffs bring in this case would frustrate two fundamental aims of the bankruptcy process.

## IV.

In deciding that these statutory claims were not barred by res judicata, the district court relied on our opinion in Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995). In Cen-Pen, we held that a creditor may challenge a plan's treatment of his secured claim as unsecured even after the plan is confirmed, because "Bankruptcy Rule 7001(2) expressly requires initiation of an adversary proceeding to determine the validity, priority or extent of a lien." Id. at 93 (emphasis in original). We then held that "[i]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." Id.

Although there is no lien at issue in this case, the district court nevertheless read Cen-Pen to create a blanket rule that plan confirmation does not have preclusive effect as to any issue that must have been decided through an adversary process. Covert, 2013 WL 6490318 at *5. It then concluded that the Plaintiffs' statutory claims for damages were claims to "recover money or property," and were thus not precluded because

14

Federal Rule of Bankruptcy Procedure 7001(1) requires such claims to be raised in adversary proceedings.  Id.

This reading of Cen-Pen is too broad.  First, Cen-Pen dealt with the status of secured claims following a bankruptcy proceeding, noting "the general rule that liens pass through bankruptcy unaffected."  Id. at 92.  We noted that this rule has statutory support in 11 U.S.C. § 506(d)(2), which states that liens are not voided "due only to the failure of any entity to file a proof of such claim."  Cen-Pen, 58 F.3d at 93.  Here, by contrast, Plaintiffs challenge the legality of the process used to collect an unsecured claim.  There is no analogous rule or statute establishing that claims challenging the filing process pass through bankruptcy unaffected, nor any rule that unsecured claims pass through bankruptcy unaffected.  Indeed, the opposite is true.  See 11 U.S.C. § 1327(c) (stating the general rule that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property [that a confirmed plan distributes] is free and clear of any claim or interest of any creditor provided for by the plan.").

Second, our reasoning in Cen-Pen was motivated by the need to protect the rights of parties in interest who are not directly involved in a bankruptcy proceeding.  In Cen-Pen, the party seeking post-confirmation reinstatement of its secured lien apparently did not participate in the debtors' bankruptcy

15

proceedings at all, and its liens were "nowhere mentioned or otherwise acknowledged" in the debtors' proposed plans. Cen-Pen, 58 F.3d at 94. Under such circumstances, we found that a creditor's lien could not be avoided simply because a plan had been confirmed because "[w]here [an adversary proceeding] is required to resolve the disputed rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed." Id. at 93 (internal citation omitted). Any such concerns over the notice necessary before altering the rights of third parties are inapplicable here, where the Plaintiffs seeking relief from the confirmation orders are the debtors themselves, and they clearly suffered from no lack of notice of the claims against them.

The Cen-Pen exception simply does not apply in this case. The Plaintiffs' statutory claims are therefore subject to the normal principles of res judicata, and are thus precluded by the confirmation of the Chapter 13 plans.

V.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

16