This appeal is from a declaratory judgment subordinating a recorded judgment lien obtained by Citibanc to mortgages executed subsequent to the judgment lien and to a statutory claim of homestead exemption. We affirm in part, reverse in part, and remand for entry of a judgment in conformity with this opinion.
The facts are best presented chronologically.
April 27, 1976: Citibanc obtained a judgment against Guy and Hazel Potter for $19,363.25 and costs of $27.50. The judgment was recorded the same day.
November 1, 1976: The Potters received a deed to the lot in question from their son, reciting $10 consideration. The deed was duly recorded. The same day the Potters executed a construction mortgage for $15,000 to Alabama Exchange Bank, which was also duly recorded.
December, 1976: The Potters entered into a construction contract with Tuskegee Lumber Company, Inc. to construct the house for $38,000.
January 10, 1977: The Potters executed another mortgage to Alabama Exchange Bank purporting to correct the previous mortgage to show it as a purchase money mortgage rather than as a construction mortgage.
February 22, 1978: The Potters executed a mortgage to Tuskegee Federal Savings Loan Association to cover $30,000 of the construction contract, including the $15,000 mortgage to Alabama Exchange. On this same date, the Potters executed a second mortgage to Tuskegee Lumber Company for $8,000 to cover the balance of the construction contract. Also on this date, the Potters filed the statutory statement claiming the property as a homestead.
July 12, 1978: Citibanc brought its action for declaratory judgment.
April 18, 1979: A final judgment was entered in which the court held that the Potters had a homestead exemption of $2,000 in the property subject to the mortgages; that Tuskegee Federal Savings Loan Association had a first mortgage on the property; that Tuskegee Lumber Company, Inc., had a second mortgage on the property; and that Citibanc had a judgment lien on the equity of the Potters in excess of $2,000. The court refused to grant priority to Citibanc's lien because such a result "abhors justice and is rejected because the plaintiff [Citibanc] would be unjustly enriched." Citibanc then appealed.
Appellant contends that the trial court erred in subordinating its judgment lien to the subsequently obtained mortgages. Appellees contend that the mortgages amount to purchase-money mortgages and therefore were correctly given priority over the judgment lien.
It is clear that the mortgages were not purchase-money mortgages. The Potters already had title to the land before they ever attempted to obtain a loan from appellees. Title was obtained from their son, for a recited consideration of $10. The mortgages were created subsequent to the deed to the Potters from their son. The trial judge was faced with the question as to whether, by virtue of the attempted correction of the mortgage to Alabama Exchange Bank, it became a purchase-money mortgage. He ruled, correctly, that the attempted correction was ineffective and that the mortgage was not a purchase-money mortgage.
The issue, therefore, plainly stated, is whether the judgment lien should be *Page 555 
given priority over subsequently created construction mortgages. As the trial court noted, there is no case law covering this exact point in Alabama. The question is therefore one of first impression. We hold that a duly registered judgment lien must be given priority over subsequently created construction mortgages.
Here, appellant Citibanc obtained a judgment against the Potters. It recorded that certificate of judgment in the probate court of their home county. A duly registered judgment lien, filed in accordance with Code 1975, §§ 6-9-210, -211, is superior to any rights acquired under a mortgage on the debtor's property executed subsequently. Compton v. Sharpe,174 Ala. 149, 56 So. 967 (1911).
The fact that the mortgages are construction mortgages makes no difference. The statutory lien attaches to the Potters' interest in the property acquired after registration of the lien, and all subsequent mortgagees are charged with notice of the statutory lien. W.T. Rawleigh Co. v. Patterson, 239 Ala. 309,195 So. 729 (1940). The facts make it unmistakably clear that appellant Citibanc complied with the statutory requirements to perfect its judgment lien. It could do no more.
It is true that Citibanc waited until the construction mortgages were executed and construction began before it sought a declaration of its rights. However, the statute does not place a duty upon the judgment lienholder to notify lending institutions of the judgment lien. Rather, the statute places prospective subsequent mortgagees on notice of the judgment lien against the debtor's property.
The subsequent mortgagees can protect themselves by a check of judgment records to determine whether there are outstanding liens against the debtor or his property. Either appellees failed to do this or overlooked the judgment lien. They cannot now claim that appellant Citibanc would be unjustly enriched because it followed the statutory requirements to perfect its judgment lien against the Potters.
Our holding is supported by other jurisdictions. In Rittenourv. Smith, 107 Ohio App. 119, 157 N.E.2d 367 (1958), the Court of Appeals of Ohio was faced with a similar problem. The court first held that a real estate mortgage and a lien of a construction company should be given priority over judgment lienholders because "the record discloses that these creditors made no objection to the construction of the houses on the lots by [the construction company] and should not now, in equity, be allowed to benefit by the expenditures made by [the construction company] in increasing the value of the lots." 157 N.E.2d at 371.
However, on rehearing, the court noted that the real estate mortgage, as to one of the lots in question, was dated after
the judgment creditors had perfected their liens on all the lots. In addition, the equitable award to the construction company was made after the judgment creditors had perfected their liens. The court modified its original judgment and held that the judgment lienholders were entitled to priority over both the construction company's lien and the real estate mortgagee. The real estate mortgagee was given priority over the judgment lienholders as to two other lots in question but only because the mortgage lien had been acquired prior to the dates of the judgments. 157 N.E.2d at 372.
Perhaps more in point is the case of Cobleskill Savings Loan Association v. Rickard, 15 A.D.2d 286, 233 N.Y.S.2d 246
(1962). There, Rickard obtained title to the property in July 1953. He transferred title to his wife in February 1954. In October 1954, December 1954, March 1955, and May 1955, several creditors filed judgment liens against Rickard. In December 1955, Rickard's wife conveyed the premises to herself and Rickard. In July 1956, Cobleskill Savings Loan recorded a building and loan mortgage executed by the Rickards on the premises in the amount of $8,000. In July 1957, a contractor filed a mechanic's lien against the premises. Rickard subsequently filed bankruptcy. The parties sought a declaration of the order of priority of the claims against Rickard in the event proceeds of the sale proved insufficient to satisfy the claims of the parties. *Page 556 
There was a conflict in the lien law of New York as to the priority of liens. One section granted a mechanic's lien priority over the prior judgment-creditors; another section granted the real estate mortgage priority over the mechanic's lien, but subordinated the real estate mortgage to the judgment-creditors. The court noted that whatever result was reached it could not be completely reconciled with the conflicting sections of the lien law. The court therefore applied equitable principles in determining the priorities. The court held:
 "[T]he equities here lie with the judgment-creditors and the mechanic's lienor. Appellant [the mortgagee] at the time it made the loan to the Rickards knew or was deemed to have knowledge of the prior judgments filed against the Rickards.
 Appellant knew or should have known that these judgments would have priority over its claim in a foreclosure proceeding, and since the money advanced was for building purposes it should also have been aware of the possibility that a mechanic's lien could be filed which, though subordinate to appellant's mortgage, would have priority over the claims of the judgment-creditors which in turn would have priority over appellant's mortgage. Appellant should have envisioned the instant problem and in fact could have eliminated it, and at the same time protected the mechanic's lienor, by compelling the Rickards to satisfy the prior judgments before it made the loan to them. If there is any fault in the creation of the instant situation it must lie with appellant, and therefore, it seems only equitable, as found by the court below, that the mechanic's lienor be given priority over appellant to the extent of the amount of the three prior judgments over which he would normally have had priority." [Emphasis supplied.]
223 N.Y.S.2d at 248.
The main factual difference between that case and this case is that Tuskegee Lumber Company is not a mechanic's lienholder. It is only a second-mortgage holder. In priority, it stands behind Tuskegee Federal Savings Loan Association's mortgage.
Thus, we hold that the trial court erred in granting the subsequent mortgages priority over the prior judgment lien. The judgment lien attached to the Potters' property immediately upon transfer from their son. Appellees were given statutory notice of the lien. They acted in disregard of such notice and are therefore subordinated to the prior judgment lien.
Appellees, Potters, Tuskegee Federal and Tuskegee Lumber, contend that a determination of priority is academic because the property in question may not be levied upon and sold in satisfaction of the judgment. They contend the Potters do not own an interest in the property which is subject to levy and sale under Code 1975, § 6-9-40 since the property is totally encumbered by a mortgage to Tuskegee Federal Savings and Loan, by a mortgage to Tuskegee Lumber Co., and by appellees Potters' homestead exemption.
Appellees' claim might have some merit if the mortgages were purchase-money mortgages. What appellees overlook is that two separate, distinct steps were undertaken by the Potters. The first was the transfer of the property by deed from the Potters' son to them. The second was the execution of the mortgages to build a home thereon. The judgment lien attached to appellees Potters' property as soon as it was transferred from their son, before the land was encumbered by the subsequent mortgages. These subsequent encumbrances do not affect the rights of the judgment lienor. Its lien attaches and it has a right to levy upon, and sell, the property to satisfy its judgment lien under the statutory scheme provided in Code 1975, §§ 6-9-40, 6-9-80 to 6-9-101.
We also hold that Citibanc's judgment lien is subordinated to the Potters' $2,000 statutory homestead exemption under Code 1975, § 6-10-2.
"When lands are purchased for a home, although a registered judgment stands against the purchaser, he may proceed to occupy it; and if there be no residence thereon, proceed to provide one, make such *Page 557 
use of same as a base of family supplies as he may, and so prevent the attaching of a judgment lien." W.T. Rawleigh Co. v.Patterson, supra, 239 Ala. at 312, 195 So. at 731. The homestead exemption lasts for the lifetime of the exemptioner,Caldwell v. Pollak, 91 Ala. 353, 8 So. 546 (1890), and is limited to $2,000 and 160 acres. Code 1975, § 6-10-2.
The trial court was therefore correct in holding that the statutory homestead exemption had attached. Since a judgment lien registered under the Code never attaches to a homestead,Majors v. Killian, 230 Ala. 531, 162 So. 289 (1935), the court was correct in subordinating appellant Citibanc's judgment lien to the Potters' statutory homestead exemption of $2,000.
In conclusion, we hold that the order of priority among the liens is as follows:
(1) Appellees Guy and Hazel Potter have a homestead exemption of up to $2,000 in the property described.
(2) Appellant Citibanc of Alabama/Tuskegee has a judgment lien on the property in excess of the Potters' $2,000 homestead exemption.
(3) Appellee Tuskegee Federal Savings Loan Association has a first mortgage on the balance of property after priorities (1) and (2).
(4) Appellee Tuskegee Lumber Company, Inc., has a second mortgage on the balance of property after priorities (1) and (2).
The trial court's judgment is affirmed in part, reversed in part, and remanded for entry of a judgment in conformity with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
 ON REHEARING
OPINION CORRECTED. APPLICATION FOR REHEARING OVERRULED.