In re Carlton ZABEL and
Diane Zabel, Debtors.

Carlton Zabel and Diane
Zabel, Plaintiffs,

v.

Schroeder Oil, Inc., Defendant.

Bankruptcy No. 95–20532–JES.
Adversary No. 99–2262.

United States Bankruptcy Court,
E.D. Wisconsin.

May 12, 2000.

George B. Goyke, Wausau, WI, for Plaintiffs.

James B. Connell, Wausau, WI, for Defendant.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

This controversy stems from a $20,000 payment made to the defendant. Schroe-der Oil, Inc., in June of 1999 from the sale proceeds of certain real estate owned by the plaintiffs (hereafter "debtors"). This was done in exchange for a release by Schroeder Oil of a junior mortgage which it held against the real estate and which was recorded in 1984. The $20,000 payment was made approximately 3½ years after the debtors' chapter 12 plan had been confirmed and which also occurred a few months after the debtors received their chapter 12 discharge. The payment and mortgage release were handled by the real estate agent for the debtors. On June 29, 1999, the debtors commenced this adversary proceeding asking that Schroeder Oil be found in contempt for violation of the § 524 discharge and seeking a refund of the $20,000. In opposition, Schroeder Oil states the following:

1. Debtors did not have the right to any "lien stripping" of this mortgage in their chapter 12 plan.

2. The debtors' plan did not provide for a discharge of this mortgage, and therefore, the mortgage "passed through" the bankruptcy.

3. The debtors' action is barred by the doctrine of accord and satisfaction.

All of these issues are now before the court by virtue of the debtors' motion for summary judgment. A stipulation of facts and briefs have been submitted by the parties.

In order to place this matter in its proper context, the following chronological sequence of events is set forth:

February 1, 1995. Debtors file voluntary petition under chapter 12.

May 1, 1995. Debtors file motion under § 506 for determination of secured status of the claim of Schroeder Oil, seeking a determination that this claim in the amount of $47,326 constitutes an unsecured claim.

June 2, 1995. Schroeder Oil objects to the debtors' § 506 motion and also files a

separate objection to debtors' chapter 12 plan contending that its claim should be treated as a secured claim.

August 24, 1995. Schroeder Oil withdraws its objection to debtors' § 506 motion.

December 7, 1995. Court confirms debtors' second amended chapter 12 plan.

December 8, 1995. Court signs order confirming debtors' second amended chapter 12 plan.

February 22, 1999. Order discharging debtors after completion of their chapter 12 plan is signed.

April 19, 1999. Case is closed.

June, 1999. Schroeder Oil is contacted by debtors' real estate agent seeking a satisfaction of the real estate mortgage held by Schroeder Oil. This results in payment of the $20,000 to Schroeder Oil from the real estate sale proceeds in exchange for a satisfaction of the mortgage.

June 29, 1999. Debtors commence this adversary proceeding against Schroeder Oil for recovery of the $20,000 and for a finding of contempt against Schroeder Oil, with sanctions.

### IS LIEN STRIPPING PERMISSIBLE IN CHAPTER 12?

 11 U.S.C. § 506[1] states that a claim is secured to the extent of the value of the property which secures a particular claim and to the extent that it is not so secured, such lien is void and constitutes an unsecured claim. This is called "lien stripping." It can take the form of either "stripping off" or "stripping down" of a lien. " 'Stripping off' of a lien occurs when the entire lien is avoided whereas 'stripping down' occurs when an undersecured lien is bifurcated and the unsecured portion of the claim is avoided." *In re Yi*, 219 B.R. 394, 397 n. 6 (E.D.Va.1998). The instant case involves "stripping off" of a lien, since the property which was sold by the debtors was fully encumbered by liens senior to the mortgage held by Schroeder Oil.

It is Schroeder Oil's position that, under the ruling of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), there can be no lien stripping in a chapter 12 case. *Dewsnup* held that a chapter 7 trustee cannot utilize § 506(d) to "strip down" an undersecured mortgage and void the unsecured portion of the mortgage holder's lien.

The vast majority of post-*Dewsnup* decisions have limited *Dewsnup* to cases arising under chapter 7 and have allowed the parties in the reorganization cases under chapters 11, 12, and 13 to employ lien

---

1. § 506. Determination of secured status.

 (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount to subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

 (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

 (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

 (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

 (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

 (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

stripping. *See Collier on Bankruptcy* ¶ 506.06(1)(c). The rationale for these post-*Dewsnup* decisions is that to prohibit lien stripping in the reorganization cases would be inconsistent with the pre-Code law and also inconsistent with those provisions and principles applicable to reorganization cases. *See Collier,* ¶ 506.06(1)(c). There are, however, a minority of cases which hold to the contrary. *See In re Blue Pacific Car Wash, Inc.,* 150 B.R. 434 (W.D.Wis.1992); *In re Taffi,* 144 B.R. 105 (Bankr.C.D.Cal.1992). *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993), criticizes both *Blue Pacific* and *Taffi* by declaring that these decisions "fail to heed *Dewsnup's* own caveat indicating that its holding would not necessarily obtain outside of chapter 7." *Jones,* 152 B.R. at 173. *Dewsnup* anticipated the ramifications of its holding by declaring the following:

> [Sec.] 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities. *See 3 Collier on Bankruptcy* Ch. 506 and, in particular, ¶ 506.07 (15th Ed.1991). Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Dewsnup,* 502 U.S. at 416–17, 112 S.Ct. at 777–78.

In *In re Dever,* 164 B.R. 132, 139 (Bankr.C.D.Cal.1994), the court states:

> Chapter 12 was specifically designed to facilitate the stripping down of liens on family farms with repayment of the reduced debt by installments under a plan of reorganization—in other words, exactly what the *Dewsnup* debtors were trying to do. Its principal purpose was to provide a mechanism for repayment of the reduced loan over time, because the farm debtors were obviously unable

to redeem their farms for cash at a foreclosure sale.

*In re Leverett,* 145 B.R. 709, 713 (Bankr. W.D.Okla.1992), states:

> The extension of *Dewsnup* to the rehabilitative chapters of the Code would, in this court's view, serve to defeat one of the primary purposes of those chapters—to permit debtors, through periodic payments under a plan, out of postpetition income, to financially rehabilitate themselves, their lives, and their businesses. The survival of all liens would preclude the finality necessary to the success of such rehabilitative efforts and would render § 506(a) virtually meaningless in those cases.

In *In re Jones, supra,* the court noted that the ability of farmers under chapter 12 to strip down liens was regarded as an important means of achieving the objective of helping them to keep their farms in the midst of a nationwide farm crisis and concluded that, to extend *Dewsnup* to chapter 12, "would be highly problematic." *Jones,* 152 B.R. at 175.

The Eighth Circuit in *Harmon v. U.S. Through Farmers Home Administration,* 101 F.3d 574 (8th Cir.1996), declared that a chapter 12 debtor can strip down an undersecured creditor's lien to the value of the collateral based upon several different code provisions which authorize such lien stripping in chapter 12. The court noted that § 1222(b)(2) permits a plan to modify the rights of holders of secured claims. Sec. 1227(c) vests property in a debtor "free and clear of any claim or interest of any creditor provided for by the plan" unless the plan or the order confirming the plan specified otherwise. 101 F.3d at 584. *Harmon* further noted that § 1225(a) deals with a creditor's allowed secured claim as determined under § 506(a) to the extent that such creditor's total claim exceeds the value of the security which the debtor holds in an allowed unsecured claim. *Id.* at 583. The court therefore concluded that where a creditor's secured interest has a zero value, its claim is en-

tirely unsecured and shall be treated in the same manner as any other unsecured claimants. These statutory provisions apply in chapter 12 cases. Chapter 7 cases, however, do not contain similar statutory provisions.

Furthermore, there are also some cases which hold that "stripping off" of a lien is permissible even in chapter 7 cases and that the *Dewsnup* decision should be confined to "stripping down" of a lien. One of these cases, *In re Yi*, 219 B.R. 394 (E.D.Va.1998), held that a creditor's wholly unsecured third lien of trust on a chapter 7 debtor's real property can be "stripped off" because the property in question was fully encumbered by prior liens and that *Dewsnup* was not intended to preclude such "stripping off." *See also In re Zempel*, 244 B.R. 625 (Bankr.W.D.Ky.1999); *In re Howard*, 184 B.R. 644 (Bankr.E.D.N.Y. 1995); and *In re Farha*, 246 B.R. 547 (Bankr.E.D.Mich.2000). *But see In re Cunningham*, 246 B.R. 241 (Bankr.D.Md. 2000).

This court concludes that lien stripping is permissible in a chapter 12 case.

## DID SCHROEDER OIL'S MORTGAGE "PASS THROUGH" THE BANKRUPTCY AND SURVIVE THE DISCHARGE?

■ Schroeder Oil next contends that, even if lien stripping is available in a chapter 12 case, its mortgage nonetheless survived confirmation of the chapter 12 plan because "appropriate affirmative steps necessary to discharge the security interest were not taken."

2. § 1227. Effect of confirmation.
　　(a) Except as provided in section 1228(a) of this title, the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or has rejected the plan.

■ That same argument was made by a secured creditor in *In re Martin*, 130 B.R. 951 (Bankr.N.D.Iowa 1991), and rejected by the court. *Martin* concluded that, under 11 U.S.C. § 1227, the secured creditor was bound by the debtor's confirmed chapter 12 plan pursuant to 11 U.S.C. § 1227.[2] A confirmed chapter 12 plan is binding on all creditors. *See In re Wickersheim*, 107 B.R. 177, 181 (Bankr. E.D.Wis.1989). The district court, affirming *Wickersheim*, stated:

> A confirmed plan binds both the debtors and their creditors to the plan provisions and is *res judicata* as to all issues that could have and should have been raised pertaining to the plan....A binding, confirmed plan serves the need for finality in determining the rights and obligations of affected parties.

*Wickersheim*, 89–C–1235 (1990). *See also In re Harmon*, 96–20834, where Judge McGarity wrote:

> A secured creditor's lien may be extinguished even if it did not file a proof of claim if the creditor participated in the reorganization and the reorganization plan provided for the claim.

The key word in *Harmon* is "participated." In *In re Penrod*, 50 F.3d 459 (7th Cir.1995), the Seventh Circuit concluded that, unless a plan of reorganization and order confirming plan states that a pre-existing lien is preserved, it is extinguished on confirmation, provided that the holder of the lien participated in the reorganization.

It is abundantly clear in this case that Schroeder Oil participated in this reorgani-

　　(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
　　(c) Except as provided in section 1228(a) of this title and except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

zation case. It filed a proof of claim. It also filed an objection to debtors' motion to avoid the lien under § 506 and then filed a separate objection to confirmation. Subsequently, Schroeder Oil withdrew its objection to the debtors' § 506 motion and did not appear at the December 7, 1995, confirmation hearing to pursue its objection to confirmation. As a result, the debtors' plan was then confirmed.

Recently, the Seventh Circuit in *In re Harvey*, 213 F.3d 318 (7th Cir.2000), declared:

> It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan.

Schroeder Oil was listed on the debtors' Schedule F (Creditors Holding Unsecured Non–Priority Claims) and received notice of all proceedings. By virtue of the § 506 motion, Schroeder Oil was given notice that the debtors intended to treat its claim as unsecured. The time for Schroeder Oil to have complained about the treatment of its claim under the plan was before the plan was confirmed. While Schroeder Oil did raise objections both to the § 506 motion and to confirmation, it withdrew its objection to the § 506 motion and did not pursue its objection to confirmation. Schroeder Oil is bound by the debtors' confirmed plan.

■ Schroeder Oil further argues that because the debtors did not file a separate adversary proceeding, pursuant to Bankruptcy Rule 7001(2), its lien survived the plaintiffs' discharge. A similar argument was made in *Harmon* but was rebuffed by the court. The court declared that where a creditor files a proof of claim, the debtor challenging such claim is not required to commence an adversary proceeding to strip down the creditor's lien. 101 F.3d at 585. In the same vein, the court in *Martin, supra,* stated that the issue of lien stripping can be brought before a court either by a motion or a complaint. *Martin,* 130 B.R. at 957.

■ "In order to extinguish or modify a lien, some affirmative steps must be taken by the debtor toward that end." *In re Deutchman,* 192 F.3d 457 (4th Cir.1999). The debtors' filing of their § 506 motion met that end.

This court is satisfied that the debtors took appropriate affirmative action to extinguish Schroeder Oil's lien. The court concludes that Schroeder Oil's mortgage was extinguished and did not pass through the chapter 12 case unaffected.

## DOES ACCORD AND SATISFACTION APPLY?

■ The requisite elements for an accord and satisfaction are a bona fide dispute as to the amount owing, an offer, an acceptance and consideration. *See Tower Insurance Co. v. Carpenter,* 205 Wis.2d 365, 556 N.W.2d 384 (Ct.App.1996). *See also Cook & Franke, S.C. v. Meilman,* 136 Wis.2d 434, 439, 402 N.W.2d 361, 363, (Wis.Ct.App.1987), where it is declared that "an accord and satisfaction is an agreement to discharge an *existing* disputed claim." (Emphasis added).

At the time the $20,000 payment was remitted to Schroeder Oil, there no longer was any existing dispute. Schroeder Oil's claim had been fully resolved by the debtors' confirmed chapter 12 plan and subsequent discharge. While the debtors and Schroeder Oil may have misunderstood the consequences of the debtors' discharge, its legal effect is clear. The debtors were entitled to have Schroeder Oil's mortgage of record released without having to make any payment to Schroeder Oil for such release.

The Bankruptcy Code contains a specific provision declaring that nothing prevents a debtor from making a voluntary payment of his discharged obligation. 11 U.S.C. § 524(f). But, in this case, there was no voluntary payment by the debtors. The $20,000 payment was made in order to close the real estate transaction. Time was of the essence. Schroeder Oil agreed

to release its mortgage, but only upon the payment to it of the $20,000. It is clear from both the legislative history and requirements imposed by the Bankruptcy Code that the drafters intended to incorporate some procedural safeguards to prevent debtors from improvidently reobligating themselves on discharged debts. *See 4 Samuel Williston, A Treatise on the Law of Contracts,* § 8:19 (4th ed.1992).

The debtors, by paying $20,000 to Schroeder Oil from the sale proceeds without consulting an attorney, acted both improvidently and under compelling circumstances.

The doctrine of accord and satisfaction does not apply.

### SANCTIONS FOR VIOLATING § 524

 Unlike 11 U.S.C. § 362(h), which mandates that the individual injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorney's fees, § 524 does not contain a similar provision. Awarding sanctions under § 524 is discretionary by the court.

Schroeder Oil knew of the discharge granted to the debtors when it received the $20,000 payment. The court, however, does not believe that Schroeder Oil's actions in demanding payment before providing a satisfaction of mortgage were done in bad faith or that, by accepting payment, it knew it was violating § 524. While this court has opted to join the majority view which permits lien stripping in chapter 12 cases, it also recognizes that there is a minority of courts which has adopted a contrary view.

Schroeder Oil's actions were technically in violation of the § 524 discharge. However, this court, in its discretion, declines to impose sanctions.

### CONCLUSION

Summary judgment is granted in favor of the debtors.

Schroeder Oil is found to be in violation of the permanent injunction under 11 U.S.C. § 524 and is ordered to forthwith refund to the debtors $20,000.

No costs or attorney's fees shall be assessed against Schroeder Oil.

A separate order granting summary judgment shall be issued simultaneous with this decision.