**In re Herbert HOLLOWAY, Jr., Debtor.**

**Herbert Holloway, Jr., Plaintiff,**

**v.**

**Southeast Alabama Medical Center and Golden Peanut Company, Defendants.**

**Bankruptcy No. No. 94–1348–WRS.**
**Adversary No. 00–12–WRS.**

United States Bankruptcy Court,
M.D. Alabama.

Oct. 24, 2000.

Jack W. Smith, Dothan, AL, for debtor.

Steven K. Brackin, Dothan, AL, for Southeast Alabama Medical Center.

Joseph D. Whitehead, Dothan, AL, for Golden Peanut Co.

### MEMORANDUM DECISION

WILLIAM R. SAWYER, Chief Judge.

This Adversary Proceeding came before the Court for trial on August 16, 2000. Plaintiff Herbert Holloway was present by counsel Jack W. Smith. Defendant Golden Peanut Company was present by counsel Joseph D. Whitehead. Counsel stipulated to the facts and made legal arguments. The question here is whether confirmation of the Debtor's Chapter 12 Plan voided the judgment lien of Golden Peanut Company.

## FINDINGS OF FACT

On April 7, 1994, Plaintiff Herbert Holloway filed a voluntary Petition in Bankruptcy pursuant to Chapter 12 of the Bankruptcy Code. On April 22, 1994 Defendant Golden Peanut Company (hereinafter Golden Peanut) filed a proof of claim in the amount of $8,898.52. Golden Peanut claimed that it was secured by virtue of a judgment entered and recorded in the Circuit Court of Coffee County, Alabama. (Claim No. 1). Holloway did not object to Golden Peanut's claim.

Holloway filed a Chapter 12 Plan with this Court on June 13, 1994. (Doc. 15—Main).[1] The Plan treated the claim of Golden Peanut as an unsecured claim. (Doc 15—Main). The Plan was amended on July 8, 1994 and again on August 1, 1994. Neither of these amendments had any effect upon the Plan's treatment of Golden Peanut's claim. The Debtor's Plan called for a distribution of 1% to unsecured creditors. Golden Peanut did not object to confirmation of Holloway's Chapter 12 Plan. On August 19, 1994, Holloway's Chapter 12 Plan was confirmed. (Doc. 26—Main). On November 4, 1999, this Court entered an order of discharge, finding that the Debtor had fulfilled all of the requirements of his Plan. (Doc. 119—Main).

It is of note that there were no proceedings of any kind, during the pendency of this Chapter 12 case, which related in any way to the judgment lien of Golden Peanut. Holloway did not object to Golden Peanut's claim, notwithstanding the fact that it was inconsistent with its treatment as an unsecured debt under the Plan. Moreover, Golden Peanut did not object to confirmation of the Plan, notwithstanding the fact that the Plan did not provide for its lien and proposed only the payment of a 1% dividend to unsecured creditors. In addition, neither party filed an adversary proceeding to determine whether the lien of Golden Peanut was valid or whether the lien had attached to any of Holloway's property.

On January 19, 2000, Holloway brought this Adversary Proceeding to determine whether the judgment of Golden Peanut had been discharged in his Chapter 12 case. (Doc. 1—AP). As set forth in the complaint, Golden Peanut was awarded a money judgment in the amount of $8,483.21, plus costs in the amount of $150.00, in a judgment which was recorded with the Judge of Probate for Coffee County, Alabama on March 25, 1993 at Judgment Book 13, Page 60. (Doc. 1—AP). At the time of the filing of this Chapter 12 case, Holloway owned 150 acres of farm land in Coffee County, Alabama which he valued at $75,000. The farm land was subject to a mortgage in favor of the Farmers Home Administration in the amount of $64,804.53.[2] Therefore, it appears that Holloway had equity in his real property in the amount of $10,195.47 at the time of filing. In addition, Holloway owned various items of personal property which he valued at $12,750.00. Holloway claimed that $3,000 of his personalty was exempt pursuant to Ala.Code Section 6–10–6 and 11 U.S.C. § 522 but made no claim of exemption with respect to the real property. *See* Schedule C (Doc. 2).

## CONCLUSIONS OF LAW

■ This is an adversary proceeding to determine the validity, extent and priority of the judgment lien of Golden Peanut upon the property of Debtor Herbert Holloway. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The question before this Court is whether confirmation of the Holloway's Chapter 12 Plan voided the

---

1. Documents in the main case file will be designated with the suffix "Main" while documents in the Adversary Proceeding file with be designated with the suffix "AP."

2. The schedules reported a balance due $63,384.93 but the Plan provided for $64,804.53. The difference between these two figures is not material here.

judgment lien of Golden Peanut. For the reasons set forth below, the Court finds that it did not and that the property in question is still encumbered by the judgment lien.

The Debtor argues that this Court's confirmation of his Chapter 12 Plan bound Golden Peanut to accept its treatment as the holder of an unsecured claim. Holloway argues that the preclusive effect of the order of confirmation caused Golden Peanut to lose its lien. Golden Peanut, on the other hand, argues that it was only his personal liability which was discharged in the bankruptcy proceedings and that its property rights passed through Holloway's bankruptcy unaffected. This Adversary Proceeding illustrates the conflict between Section 1227 of the Bankruptcy Code (which provides for the binding effect of a confirmed Chapter 12 Plan) and the common law rule that liens pass through bankruptcy unaffected, unless some affirmative action is taken. *See, e.g., Southtrust Bank of Alabama, N.A. v. Thomas (In re Thomas),* 883 F.2d 991, 996 (11th Cir.1989), *cert. denied,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). The Court will examine Section 1227 of the Bankruptcy Code and review the common law rule of *Long v. Bullard.* Having done this, this Court concludes that this case is controlled by the decision handed down by the Eleventh Circuit Court of Appeals in *Thomas.* This Court finds that confirmation of a Chapter 12 Plan, without more, does not divest a judgment lien creditor of his lien upon the Debtor's property, notwithstanding contrary provisions in the Plan.

### A.

While Holloway does not dispute the proposition that Golden Peanut held a valid judgment lien upon his property at the time the petition in bankruptcy was filed, a brief review of the pertinent legal principles is in order. At the time Holloway filed his petition in bankruptcy, Golden Peanut held a valid money judgment against him. Alabama law provides that the holder of a judgment has a lien upon property of the Debtor's, which is subject to execution, upon recording the judgment, or a certificate of the judgment, with the Judge of Probate. *See* ALA.CODE § 6–9–211; *see also Citibanc of Alabama/Tuskegee v. Potter,* 379 So.2d 553, 555 (Ala.1979) (properly recorded judgment lien had priority over construction lien which was recorded later in time). When Golden Peanut recorded its judgment with the Judge of Probate for Coffee County, Alabama, it acquired a valid lien upon Holloway's farm. The question then becomes what, if anything, happened to that lien in the Holloway bankruptcy proceeding.

### B.

This analysis begins with a review of Section 1227 of the Bankruptcy Code, which provides as follows:

(a) Except as provided in section 1228(a) of this title, the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor, such equity security holder, or such general partner in the debtor has objected to, has accepted, or rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in section 1228(a) of this title and except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1227. It does not appear that there is any authority, which is binding upon this Court, on the question of whether Section 1227 provides that confirmation

of a Chapter 12 Plan, by itself, operates to divest a judgment lien holder of his lien.

Section 1227(b) states that "confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1227(b). Moreover, the property is "free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1227(c). These provisions have been read in two different ways. One reading of this section yields the result that where, as here, a judgment lien creditor is "provided for" as an unsecured creditor, that the debtor would then take his property free and clear on the judgment lien. An alternate reading of the section yields the result that the lien holder's interest does not become property of the estate and therefore is not, simply by virtue of Section 1227, extinguished upon the confirmation of a Plan. *See Thomas,* 883 F.2d at 998, n. 13.

### C.

 Over a century ago, the United States Supreme Court announced a fundamental principle of bankruptcy law. A discharge in bankruptcy does not divest a lien holder of its lien upon the debtor's property. *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); *see also Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 582–83, 55 S.Ct. 854, 859–60, 79 L.Ed. 1593 (1935); *United States Nat'l Bank v. Chase Nat'l Bank,* 331 U.S. 28, 33, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320 (1947) (dictum); *In re Woodmar Realty Co.,* 307 F.2d 591, 594–95 (7th Cir.1962); *Dizard & Getty, Inc. v. Wiley,* 324 F.2d 77, 79–80 (9th Cir.1963); *Clem v. Johnson,* 185 F.2d 1011, 1012–14 (8th Cir. 1950); *DeLaney v. City and County of Denver,* 185 F.2d 246, 251 (10th Cir.1950); *In re Bain,* 527 F.2d 681, 685–86 (6th Cir.1975); *In re Honaker,* 4 B.R. 415, 416 and n. 3 (Bankr.E.D.Mich.1980); *cf. In re Rebuelta,* 27 B.R. 137 138–39 (Bankr. N.D.Ga.1983); *In re Hines,* 20 B.R. 44, 48 (Bankr.S.D.Ohio 1982). A discharge in bankruptcy relieves the debtor from his personal obligation to pay an indebtedness, however, any liens which were perfected as of the time the petition in bankruptcy is filed, remain attached to property. To state the proposition differently, a discharge in bankruptcy voids the in personam liability of the debtor but does not affect the creditor's in rem rights with respect to property. *See Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). This adversary proceeding illustrates the tension of Section 1227 with the rule of *Long v. Bullard.*

The United States Court of Appeals for the Eleventh Circuit applied these principles to a factually analogous case under Chapter 13 of the Bankruptcy Code and found a lien was "not voided by the fact that the debtors passed the interest they had in the mobile home through bankruptcy." *Thomas,* 883 F.2d at 997 (following *In re Tarnow,* 749 F.2d 464, 465 (7th Cir. 1984)). While *Thomas* was a Chapter 13 case and the case at bar is under Chapter 12, the same rule applies as the two pertinent code sections are, for all practicable purposes, indistinguishable. *Compare* 11 U.S.C. § 1227 *with* 11 U.S.C. § 1327. In *Thomas,* a Chapter 13 Plan had provided for payment to SouthTrust Bank of its indebtedness which was secured by a mobile home. However, SouthTrust failed to file a proof of claim and for that reason was not paid. Thomas argued that the lien of SouthTrust was "provided for" by the plan and for that reason its indebtedness was discharged and its lien voided. The Eleventh Circuit held that a debtor could not, under these circumstances, improve its position. That is, a debtor cannot acquire any greater interest in property by virtue of confirmation of a Chapter 13 Plan than he had at the time he filed bankruptcy. *Thomas,* 883 F.2d at 998 (citing *In re Honaker,* 4 B.R. 415 (Bankr. E.D.Mich.1980)).

The Eleventh Circuit in *Thomas* rejected the debtors' claim that confirmation vested the mobile home in them free and

clear of the lien of SouthTrust. *See Thomas,* 883 F.2d at 997–98. The Court examined Section 1327 and found that the lien of SouthTrust had not been "provided for." As Section 1227 contains the virtually the same language, it is clear that Holloway in this case did not "provide for" the lien of Golden Peanut. Therefore, Holloway does not take his interest in the property free and clear of the judgment lien.

In two decisions handed down by the United States Court of Appeals for the Fourth Circuit, the Court held that confirmation of Chapter 13 Plans, without more, did not divest the holder of a lien of his rights in the collateral. *See Deutchman v. Internal Revenue Service (In re Deutchman),* 192 F.3d 457 (4th Cir.1999) *and Cen–Pen Corporation v. Hanson (In re Hanson),* 58 F.3d 89 (4th Cir.1995). In *Deutchman,* the Court held that:

> "[a] bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property." (citation omitted). In order to extinguish or modify a lien, the debtor must take some affirmative step toward that end. As we have observed in the past "unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation." (citation omitted).

*Deutchman,* 192 F.3d at 460 (citing *Cen–Pen Corp.,* 58 F.3d at 92).

The Fourth Circuit held in *Deutchman* that the debtor had not taken sufficient affirmative steps to divest the Government of its tax lien, specifically noting that it had not filed a pre-confirmation adversary proceeding or objected to the Government's secured tax claim. The Court disparaged the debtor's attempt to "camouflage" his treatment of the tax lien by way of the language in the Chapter 13 Plan. *Deutchman,* 192 F.3d at 460.

The facts in *Deutchman* are similar to the facts of this case in two important respects. First, *Deutchman* involved a Federal tax lien, which is a non-consensual statutory lien, and which is general in nature, that is it not specific to one parcel of property. This is much more closely analogous to a judgment lien which is also non-consensual, statutory and general in nature, as opposed to a mortgage, which is consensual and specific to one given parcel of real property. The holding in *Deutchman* makes clear that the lien in question need not be a consensual security interest. In *Thomas,* the Eleventh Circuit described, in some detail, the property interest held by the Bank. *See Thomas,* 883 F.2d at 995–96. As Alabama is a "title theory" and not a "lien theory" state, a mortgage holder has legal title to the property, subject only to the debtor's equity of redemption. However, this discussion by the Court in *Thomas* does not suggest that a creditor who holds a statutory or non-consensual lien as opposed to a mortgage would be treated differently for purposes of the analysis here. Regardless of the underlying theory by which the holder of a lien obtains its interest in the property of a debtor, the analysis of its treatment of the secured claim under the Bankruptcy Code is the same. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (consensual liens treated like non-consensual liens for purposes the entitlement to interest under Section 506).

Second, the Government in *Deutchman* filed a proof of claim to which no objection was filed, which is the same as the situation here. Filing a claim in a Chapter 13 case is not, by itself, sufficient participation to cause a secured creditor to lose its lien. The Court in *Deutchman* faced the same scenario as is presented here. The creditor filed a secured claim and the debtor did not object. On the other hand, the creditor in *Deutchman,* as here, failed to object to confirmation of the Plan. Both debtor and creditor are equally culpable for failing to resolve the inconsistency between a properly filed secured claim,

**294**

which is allowed if no objection is filed, 11 U.S.C. § 502(a), and a Plan which does not provide for the creditor's lien. It is this paradox which must be resolved here.

The Fourth Circuit in *Cen–Pen* held that "because an unchallenged lien survives the bankruptcy discharge of a debtor, however, a creditor with a loan secured by a lien on the debtor's property is free to ignore the bankruptcy proceeding and look solely to the lien for satisfaction of the debt." *Cen–Pen Corp.*, 58 F.3d at 94.

> The fact that Cen–Pen was listed as an unsecured creditor in the bankruptcy schedules does not suffice to avoid its liens. (citation omitted). "Even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured." (citation omitted). The Hansons should not be entitled to eliminate otherwise valid liens on their residence simply by characterizing Cen–Pen's claims in the plan as unsecured.

*Id.* Holloway simply ignored the judgment lien of Golden Peanut in his Chapter 12 Plan and likewise ignored its proof of claim, which had claimed a lien by virtue of its judgment, the validity of which Holloway does not dispute. It would be easy to fault Holloway for not providing for the judgment lien in his Plan and failing to object to Golden Peanut's proof of claim. On the other hand, it would have been a simple matter for Golden Peanut to have objected to confirmation of the Chapter 12 Plan and raised its concerns prior to confirmation of the Plan. As no contested matter or adversary proceeding was brought, the judgment lien of Golden Peanut survived confirmation of the Chapter 12 Plan. *See* Fed.R.Bankr.P. 7001 and 9014 (providing procedural rules for the litigation of contested matter and adversary proceedings).

3. Golden Peanut does not fault Holloway for not recognizing its lien in his Chapter 12 Plan. It is not clear that Holloway knew of

The United States Court of Appeals for the Fifth Circuit held that a construction lien of a plumber could not be avoided through the expediency of listing his claim as disputed and unsecured and treating the plumber as the holder of an unsecured claim in a Chapter 13 plan. *See Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir.1985). "It would be anomalous indeed were we to permit Simmons a windfall for his mischaracterization of Savell's claim in the plan as unsecured." *Simmons*, 765 F.2d at 555–56. The same can be said here. Holloway should have treated Golden Peanut as the holder of a secured claim.[3] His failure to do so should not result in a windfall.

The United States Court of Appeals for the Seventh Circuit, in a case under Chapter 11, held that "participation" by the secured creditor was sufficient to divest it of its lien. *See In re Penrod*, 50 F.3d 459 (7th Cir.1995). In *Penrod*, a secured creditor filed a proof of claim but did not object to confirmation of the debtor's Chapter 11 Plan. The Seventh Circuit found that this "participation" was sufficient to cause the "extinction" of the creditor's lien. *Penrod*, 50 F.3d at 462–63. The Court in *Penrod* did not require the initiation of an adversary proceeding or a contested matter. The Seventh Circuit in *Penrod* voided the lien of a creditor who had filed a proof of claim in a case under Chapter 11 while the Fourth Circuit in *Cen–Pen* and *Deutchman* would require something more in a case under Chapter 13. At least one Bankruptcy Court has attempted to reconcile the two lines of cases on the basis of the differences between Sections 1327 and 1141. *See In re Regional Building Systems*, 251 B.R. 274 (Bankr.D.Md.2000) (contrasts the language of "dealt with" in Section 1141(c) and "provided for" in section 1327(c) and notes that Chapter 11 cases are larger and more complex than cases under Chapter 13 and, in addition, that Chapter 11 of the Code calls for the

that the judgment had been recorded at the time the Chapter 12 bankruptcy case was pending.

creditors to vote for a plan while there is no like provision in Chapter 13).

A recent decision from a Bankruptcy Court in Wisconsin held that the initiation of a contested matter was a sufficient affirmative step to result in the divestment of a second mortgage in a case under Chapter 12. *See Zabel v. Schroeder Oil, Inc. (In re Zabel),* 249 B.R. 764 (Bankr.E.D.Wis.2000). In *Zabel,* the debtor filed a motion, pursuant to 11 U.S.C. § 506, seeking a determination that Schroeder Oil did not have a valid lien upon his property. In addition, Schroeder Oil filed an objection to confirmation of the Debtors' Chapter 12 Plan. The Bankruptcy Court held that this was sufficient participation to divest the lien. *Zabel,* 249 B.R. at 769. In the instant Adversary Proceeding, Holloway did not file such a motion, nor did Golden Peanut file an objection to confirmation of the Plan. As there was no adversary proceeding or contested matter in which the lien of Golden Peanut was in issue, there was no proceeding which could have caused the judgment lien to be removed.

In conclusion, this Court holds that confirmation of the Debtor's Plan here did not divest Golden Peanut of its judgment lien. Golden Peanut had an interest in the Debtor's property at the time the petition in bankruptcy was filed. The Debtor's Plan did not provide for the judgment lien and therefore it survived the discharge in bankruptcy. A separate order of judgment consistent with this memorandum decision will be entered by the Court.