In re Herbert HOLLOWAY, Jr., Debtor.

Herbert Holloway, Jr., Appellant,

v.

Southeast Alabama Medical Center and Golden Peanut Company, Appellees.

Civ.A. No. 01–A–122–N.

United States District Court, M.D. Alabama, Northern Division.

April 16, 2001.

Jack W. Smith, Dothan, AL, for debtor.

Steven Kay Brackin, Lewis, Brackin, Flowers & Hall, Joseph Daniell Whitehead, Joseph D. Whitehead, PA, Dothan, AL, for appellees.

Kenneth R. Jones, Georgiana, AL, trustee pro se.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I.  INTRODUCTION

This case is before the court on appeal from a decision of the United States Bankruptcy Court for the Middle District of Alabama, Case No. 94–1348–WRS. On October 24, 2000, the bankruptcy court issued an order holding that Golden Peanut Company ("Golden Peanut") was not

divested of its judgment lien by confirmation of the Chapter 12 plan of the debtor, Herbert Holloway ("Holloway").[1] Holloway appeals the bankruptcy court's decision to this court pursuant to 28 U.S.C. § 158(a). For the reasons stated below, the court finds that the bankruptcy court's order is due to be AFFIRMED.

## II. BACKGROUND[2]

This case arises from Holloway's Chapter 12 bankruptcy proceedings. On April 7, 1994, Holloway filed a voluntary Petition in Bankruptcy under Chapter 12 of the Bankruptcy Code. At the time of his filing of the Chapter 12 case, Holloway owned 150 acres of farm land in Coffee County, Alabama, which he valued at $75,000, and in which he held $10,195.57 in equity. On April 22, 1994, Golden Peanut filed a proof of claim, stating that it had a judgment lien entered and recorded in the Circuit Court of Coffee County, Alabama. Holloway did not object to this claim.

In the Chapter 12 Plan filed by Holloway in the bankruptcy court, the claim of Golden Peanut was treated as an unsecured claim. The Plan called for a 1% distribution to unsecured creditors. Golden Peanut did not object to the confirmation of Holloway's Chapter 12 Plan, and the Plan was ultimately confirmed.

On November 4, 1999, the bankruptcy court entered an order of discharge, finding that Holloway had fulfilled all of the requirements of the Chapter 12 Plan. On January 19, 2000, Holloway brought an adversary proceeding to determine the validity of a judgment lien of Golden Peanut upon Holloway's property. It was the bankruptcy court's decision that the judgment lien survived Holloway's discharge in bankruptcy that is at issue in this appeal.

## III. STANDARD OF REVIEW

A district court reviews a bankruptcy court's factual findings under the clearly erroneous standard. *In re Thomas*, 883 F.2d 991, 994 (11th Cir.1989). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with the definite and firm conviction that a mistake has been committed." *General Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir.1997). In contrast, a district court reviews de novo a bankruptcy court's conclusions of law. *In re Simmons*, 220 F.3d 738, 741 (11th Cir.2000). Equitable determinations by a bankruptcy court are subject to review under an abuse of discretion standard. *In re General Dev. Corp.*, 84 F.3d 1364, 1367 (11th Cir.1996).

## IV. DISCUSSION

The bankruptcy court ruled in this case that confirmation of Holloway's Chapter 12 bankruptcy plan did not divest Golden Peanut of its judgment lien because the plan did not provide for the judgment lien and, therefore, the lien survived the discharge in bankruptcy. *Holloway v. Southeast Alabama Med. Center*, 254 B.R. 289, 295 (Bankr.M.D.Ala.2000). The bankruptcy court explained that its analysis was a resolution of a conflict between Section

---

**1.** The caption of the bankruptcy court's opinion, the notice of appeal, and all of the briefs filed in this appeal include Southeast Alabama Medical Center as a defendant in this adversary proceeding, but there is no final Order pertaining to Southeast Alabama Medical Center in this case. No party has raised an issue as to the lack of a final Order as to Southeast Alabama Medical Center. Accordingly, this Memorandum Opinion and accompanying Order are only addressed to Golden Peanut, and the court expresses no opinion as to any issues pertaining to Southeast Alabama Medical Center.

**2.** These background facts are drawn largely from the bankruptcy court's opinion.

1227 of the Bankruptcy Code, which provides that a confirmed Chapter 12 bankruptcy plan has a binding effect, and the common law rule that a discharge in bankruptcy does not divest a lien holder of its lien and the lien passes through bankruptcy unaffected. *Id.* at 292. In resolving this conflict and determining that Golden Peanut's lien passed through bankruptcy, the bankruptcy court looked to cases which arose from Chapter 12 bankruptcies, but also to cases which arose from bankruptcies filed under other chapters. *Id.*

■ The appellant in this case, Holloway, contends that the cases upon which the bankruptcy court relied cannot be applied in this case because this case involves a Chapter 12 bankruptcy and Chapter 12 is unique because it applies only to family farms. While Holloway argues that Chapter 11 and Chapter 13 cases are irrelevant to this case involving Chapter 12, reported decisions arising within the context of Chapter 12 bankruptcy plans, including a decision relied upon by Holloway, rely on cases which arose under provisions other than those in Chapter 12. *See Zabel v. Schroeder Oil, Inc.,* 249 B.R. 764, 769 (Bankr.E.D.Wis.2000); *see also Justice v. Valley Nat'l Bank,* 849 F.2d 1078, 1083 (8th Cir.1988) ("Chapter 12 is patterned after Chapter 13, rendering Chapter 13 cases relevant to our interpretation of Chapter 12."). As these courts recognize, where the language used by Congress in different bankruptcy chapters is substantially similar, the interpretation of that language in one chapter is helpful in interpreting the same language in another chapter. Accordingly, to the extent that there is case law interpreting statutory provisions substantially similar to the statutory provisions at issue here, the court will apply that case law where appropriate. *Justice,* 849 F.2d at 1083.

■ This case presents an unusual situation because the secured creditor filed a proof of claim which was not objected to by the debtor, but in filing the bankruptcy plan, the debtor treated the secured creditor as an unsecured creditor, and even though the creditor had filed a proof of claim as a secured creditor, the creditor did not object to the plan's treating the claim as unsecured. The bankruptcy court described this situation as a paradox because both the debtor and creditor are equally culpable for failing to resolve the inconsistency between a properly filed secured claim, and a plan which does not provide for the creditor's lien. *Holloway,* 254 B.R. at 293. The court ultimately determined, however, that the lien was not extinguished because the plan did not "provide for" Golden Peanut pursuant to 11 U.S.C. § 1227. *Id.* at 295. This court will, therefore, turn to the issue of the interpretation of "provided for" as it applies in this case.

Under 11 U.S.C. § 1227:

Except as provided in section 1228(a) of this title and except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1227(c).

Holloway contends that by including Golden Peanut as an unsecured creditor and paying money to Golden Peanut as an unsecured creditor, Golden Peanut is a creditor "provided for" by the plan. Holloway states that it is not disputed that the creditor took its money under the plan and did not object to the plan. Holloway further argues that it is illogical to allow for a bankruptcy lien to pass through the bankruptcy estate and encumber a family farmer's land after the bankruptcy plan has

been confirmed and payment made under it, because the intent of Chapter 12 was to allow farmers protection of their land. Holloway contends that when notice is given to a creditor with a lien that the creditor is included in the Chapter 12 bankruptcy plan, and the creditor does not object and is paid under the plan, the lien is extinguished.

There is no dispute in this appeal that Holloway only listed Golden Peanut as an unsecured creditor and that the money paid to Golden Peanut was not the full amount of its security interest. The question before this court, therefore, is to what extent a secured creditor must be included in the bankruptcy plan in order to be "provided for" under the language of the statute in Chapter 12.

The Supreme Court has defined "provided for," in the context of Chapter 13,[3] in the following way: "[t]he most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan." *Rake v. Wade,* 508 U.S. 464, 473, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (citation omitted). The Fourth Circuit applied this definition to the provision of Chapter 13 which is applicable to the Chapter 12 provision at issue here, stating that a plan provides for a claim or interest when it acknowledges the claim or interest and makes explicit provision for its treatment. *In re Deutchman,* 192 F.3d 457, 461 (4th Cir.1999); *see also Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 94 (4th Cir.1995).

The Eleventh Circuit has also referred to a definition of "provided for" in the context of a Chapter 13 claim. *See In re Thomas,* 883 F.2d 991 (11th Cir.1989).

The Eleventh Circuit noted that a plan did not "provide for" a creditor where zero sums were paid. *Id.* at 998 n. 13. In this case, of course, more than zero sums were paid to the creditor. This court must decide, therefore, whether an amount that is less than the full amount of the secured loan, but more than zero, which is paid to the secured creditor is sufficient to bring that creditor within the definition of creditors "provided for" by the plan.

The Fourth Circuit has held that a Chapter 13 plan did not "provide for" a creditor when the plan did not provide for payment of the underlying claim in the amount equal to the security. *Cen–Pen,* 58 F.3d at 94. The court reasoned that where a lien is not acknowledged, merely listing a creditor as unsecured creditor, entitling it to a percentage of its claim, did not "provide for" that claim. *Id.; see also In re Deutchman,* 192 F.3d at 461 (rejecting the argument that payment of the partial amount due the IRS provided for the IRS's claims by camouflaging those claims as unsecured claims in the plan).

The Fifth Circuit has also reasoned that it would be anomalous if a court were to permit a debtor a windfall based on his mischaracterization of a claim in a Chapter 13 plan as unsecured. *Simmons v. Savell,* 765 F.2d 547, 555–56 (5th Cir.1985). The Fifth Circuit rejected the idea that a debtor could materially improve his financial situation by unencumbering secured assets by simply passing the property through the bankruptcy estate. *Id.* at 555 (citation omitted). Under the facts in *Simmons,* the secured creditor filed a proof of claim identifying his claim as secured by a construction lien. *Id.* at 549. The debtor

---

**3.** Chapter 13 contains language which is almost identical to that in the relevant Chapter 12 provision:

Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327(c).

filed a Chapter 13 plan which listed the creditor as unsecured and proposed a deferred 10% cash payout to unsecured creditors. *Id.* The bankruptcy court confirmed the plan, stating that no objections to confirmation of the plan were considered and that no one other than the trustee and debtor's attorney appeared at the confirmation hearing. *Id.* The trustee then filed a motion to allow claims, listing the creditor's claim as unsecured, and providing that claims would be deemed allowed unless objection was made. *Id.* The creditor did not file an objection. The Fifth Circuit held that the statutory lien remained unimpaired by the order of confirmation. *Id.* at 559; *see also In re Deutchman,* 192 F.3d at 461 ("in order to 'provide for' a creditor ... the plan must, at a minimum, clearly and accurately characterize the creditor's claim throughout the plan.").

This court is persuaded by these cases that the proper interpretation of "provided for" in Chapter 12 is that a secured creditor is not provided for in the plan merely because that creditor is listed as an unsecured creditor and allowed some payment under the plan. Instead, a creditor's secured lien must be acknowledged as a secured lien in order for that creditor to be "provided for" in the plan. The court, therefore, agrees with the bankruptcy court that Golden Peanut was not provided for by the bankruptcy plan in this case.

The court recognizes that there are decisions which have focused on whether the creditor had opportunity to object, and did so, rather than on whether the plan provided for the creditor. For instance, in the *In re Zabel* decision relied on by Holloway, the court held that the debtors took appropriate action to extinguish the lien, and the creditor failed to object, so the creditor was bound by the confirmed bankruptcy plan. *In re Zabel,* 249 B.R. 764 (E.D.Wis.2000).

The statutory provision which provides that the effect of a confirmed plan is to free the debtor's property from claims requires that, in order to have this effect, the plan must have provided for the creditor. 11 U.S.C. § 1227(c). This court, therefore, disagrees with the *In re Zabel* decision and agrees with the Fifth Circuit in *Simmons* that even though the secured creditor should have objected to confirmation of a plan which listed it as an unsecured creditor, the creditor's failure to do so should not be permitted to justify avoidance of a lien securing a claim that was filed as a secured claim by the creditor. *Simmons,* 765 F.2d at 556. Instead, the plan must have "provided for" the creditor before the debtor's property will be considered to be free from the claim of the creditor. *See* 11 U.S.C. § 1227(c).

Holloway has also argued that the result reached by the bankruptcy court is counter to the intent of Congress in providing protection to family farmers and that a family farmer's land ought not be encumbered if the bankruptcy plan is confirmed and discharged. This argument is not persuasive in a case such as this one, however, where the nature of the creditor's lien is not correctly represented in the bankruptcy plan, and the payment to the secured creditor is less than the full amount of the security interest. This case does not present a situation in which the farmer has paid all that is owed under the lien, but the land is still encumbered. Instead, under the confirmed plan, the creditor paid only what was due as a result of his misrepresentation as to the nature of the lien, and he would, therefore, receive a windfall if the secured interest on his land were extinguished.[4]

4. Holloway also relies on *In re Penrod,* 50 F.3d 459 (7th Cir.1995). In that case, the

## V. *CONCLUSION*

The court is persuaded that Holloway's bankruptcy plan did not provide for the lien of Golden Peanut and agrees with the decision of the bankruptcy court that Golden Peanut's lien was not extinguished by Holloway's discharge in bankruptcy. Accordingly, the decision of the bankruptcy court is due to be AFFIRMED. A separate Order and Judgment will be entered in accordance with this Memorandum Opinion.

court held that a lien did not survive a discharge in bankruptcy. *Id.* at 464. That case is distinguishable, however, because the bankruptcy plan provided that the creditor would be paid in full with interest. *Id.* at 461.